ESTATE OF GRACE ADAMS HOWARD, DECEASED, GEORGE ADAMS HOWARD AND SAMUEL H. KAUFFMANN, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99851. Promulgated July 31, 1940.

*H. Cecil Kilpatrick, Esq.*, and *Frederick M. Bradley, Esq.*, for the petitioners.

*E. L. Corbin, Esq.*, for the respondent.

OPINION.

BLACK: In his determination of the deficiency, respondent, in disallowing petitioners' decedent a credit of $2,500 personal exemption as a head of a family, did not do so upon the ground that Kathryn Gwynn was not during the year dependent for support upon her aunt, Grace Adams Howard, petitioners' decedent. The ground stated by respondent for disallowing the $2,500 personal exemption credit claimed was that since decedent did not maintain a common home for herself and her dependent niece, the exemption claimed as head of a family was not allowable under the provisions of article 25–4 of Regulations 94, printed in the margin.[1]

Petitioners, in support of their contention that decedent was entitled to $2,500 personal exemption as head of a family, rely upon the following points:

1. The decedent was supporting and maintaining and exercising family control over a dependent, which control was based on a moral obligation to support the dependent.

2. The circumstances in decedent's home, coupled with the dependent's infirmity, rendered it necessary that the dependent be maintained in a separate establishment.

3. The dependent was closely connected with the taxpayer by relationship by marriage.

4. The decedent was the "head of a family" within the meaning of section 25 (b) of the Revenue Act of 1936.

We think the facts in the record support petitioners on all four points.

1. It is clear that the decedent actually supported her niece and that this niece was wholly dependent on her aunt for support. While there may have been no legal obligation on the part of decedent to

---

[1] ART. 25–4. *Personal exemption of head of family.*—A head of a family is an individual who actually supports and maintains in one household one or more individuals who are closely connected with him by blood relationship, relationship by marriage, or by adoption, and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation. In the absence of continuous actual residence together, whether or not a person with dependent relatives is a head of a family within the meaning of the Act must depend on the character of the separation. If a father is absent on business, or a child or other dependent is away at school or on a visit, the common home being still maintained, the additional exemption applies. If, moreover, through force of circumstances a parent is obliged to maintain his dependent children with relatives or in a boarding house while he lives elsewhere, the additional exemption may still apply. If, however, without necessity the dependent continuously makes his home elsewhere, his benefactor is not the head of a family, irrespective of the question of support. * * *

support her niece, the facts show that there was a moral obligation on her part to do so. Prior to the death of her husband's sister, decedent promised the sister to take her child into her home and treat her as one of her children. The keeping of this promise throughout her life, even to the point of making in her will the welfare of her niece the first charge against the residue of her estate, shows the strength of the decedent's moral obligation to support the niece.

The facts in the instant case make it distinguishable from *Charlotte Hoskins*, 42 B. T. A. 117. In the *Hoskins* case we held that there was neither legal nor moral obligation on the part of the aunt to support the niece, who was an adult about thirty years of age, in good health, and employed for a part of the time as a stenographer in each of the taxable years. In that case, in ruling that the niece was not dependent for support upon her aunt, within the meaning of the applicable regulations, we said:

* * * Dependency under the definition goes further than economic convenience; it speaks in terms of people incapable of supporting themselves because of infancy, senility, mental incompetence, physical incompetence, and like or similar circumstances. Cf. *Augustus S. Loyless*, 40 B. T. A. 600. * * *

In the instant case it is clear that Kathryn was wholly dependent upon decedent for support throughout the taxable year, within the meaning of the Commissioner's regulations, for she was totally blind, had no trade or occupation, and no income from any source except what her aunt gave her.

2. The circumstances in decedent's home, coupled with the dependent's infirmity, rendered it necessary and advisable that the niece be maintained in a separate establishment, the decedent being financially able to defray the expenses thereof.

Both the Board and the courts have recognized situations of such a character as to render it necessary for persons to maintain relatives elsewhere than in a common home. In *Olive Ross*, 37 B. T. A. 928, the Board said, of a situation in which a daughter supported an insane mother in a state institution:

The regulations recognize that there need not be continuous, actual residence together if circumstances justify the separation and there is a necessity for continuously maintaining the dependent elsewhere. The record here fully establishes the necessity for the mother's absence from her daughter's home. * * *

See also *William Lee Tracy*, 39 B. T. A. 578; *Mackechney v. United States* (U. S. Dist. Ct., N. Dist. Tex., April 5, 1926); *Hassard Short*, 39 B. T. A. 567.

3. The dependent in this case, Kathryn Gwynn, was the only surviving niece of the decedent's husband, and was therefore a niece

by marriage to decedent. The Board has recognized that a dependent niece is closely connected with taxpayer by blood.

In *William Lee Tracy, supra,* the Board said:

> This petitioner actually supported and maintained in one household two individuals who were closely connected with him, his mother and niece, and exercised a certain amount of family control over them. * * *

There is no question but that a niece is closely connected by blood relationship to her aunt or uncle. It follows then that a niece by marriage is just as closely connected by marriage as a niece by blood would be connected by blood.' For reasons already stated, there was such relationship by marriage between Kathryn Gwynn and petitioners' decedent as to bring the case within the Commissioner's applicable regulation.

4. From what we have said above, it seems clear that petitioners' decedent was during the taxable year the head of a family within the meaning of section 25 (b) of the Revenue Act of 1936 and the Commissioner's regulation promulgated thereunder. Therefore we reverse the action of the Commissioner in disallowing the personal exemption credit of $2,500.

*Decision will be entered for the petitioners.*