MARY B. ADAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103197.  Promulgated September 25, 1941.

*George E. Hamilton, Jr., Esq.*, and *John L. Hamilton, Esq.*, for the petitioner.

*E. L. Corbin, Esq.*, for the respondent.

194

OPINION.

KERN: The case presented is one of law and involves two questions—(1) whether the term "head of a family", as construed in respondent's regulations as applying to an individual "closely connected  *  *  by blood", applies to a first cousin; and (2) whether actual residence in the same household with petitioner of the dependents as to whom family headship is claimed is, in the circumstances presented here, necessary to bring the case within the statute.

Since our resolution of the first question will render any answer to the second unnecessary, we shall not discuss the latter here.

Headship of a family connotes ordinarily the status which a man acquires by marriage, or by acquiring both wife and children, or children by adoption. This is the normal condition. But it may also connote the position assumed by a child, one or both of whose parents may be still living, when the child, because of the age or infirmity of his parents, supplants the father as the economic mainstay of the household. This in an inversion of the normal condition. The same headship would remain, of course, if that child continued to keep his younger, or infirm, brothers and sisters from want by his exertions; certainly, at least, during their minority. The concept is familiar to us all. The only difficulty, like most difficulties in the law, is to know where to draw the line. But if the word "family" be kept steadily in view we can not go far wrong. That term, as used in the statute, can not refer to all persons descended from a common ancestor, or, in other words, related in blood. The semibarbaric Gaels of North Britain and Ireland once treated it so and thus extended its meaning to the whole sept, or clan, as the Hebrew children did in an earlier age; but the fluidity of modern social relations has long since done away with such patriarchal concepts, even in the South of our own country where almost any degree of consanguinity once entitled one to the familiar address of "cousin." We think of "family" as the immediate family, that is, the father and mother and the children of that common father and mother. An

orphaned nephew or niece often becomes even at this day, when the social security established and maintained by Government is rapidly replacing family dependencies hitherto relied on, the member in every true sense of that small household called "the family." A niece stands, under Canon law rules familiar to all common lawyers at least since Blackstone, 2 Com. 206 (see Co. Litt. 23), in the third degree of consanguinity to her supporting uncle who may claim the tax exemption. It is obviously such a "close" relation as the regulations speak of, and we have so held. *William Lee Tracy*, 39 B. T. A. 578; *Estate of Grace Adams Howard*, 42 B. T. A. 449.

But when we go beyond the third degree of consanguinity—and the nearest blood relation here was that of a first cousin and therefore of the fourth degree—we must answer the question whether such a relative shall also be brought within the household as a matter of family moral obligation, so as to entitle her protector to the tax benefit? Petitioner confesses that she can find no authority to support the claim. The Circuit Court of Appeals for the District of Columbia has held that a second cousin does not fall within the statutory category. *Wade* v. *Helvering*, 117 Fed. (2d) 21. And we are of the opinion that a first cousin is also not sufficiently close. A first cousin is not within the prohibited degree of relation for purposes of marriage, and if she is to be regarded as sufficiently remote for that purpose, we think that she may well be excluded from the familial hearth also for tax purposes. Nor is this test an unreal or arbitrary one. As we have sought to point out, the family in modern society exists as a unit for the procreation and rearing of children. The children themselves, the product of this union, may continue to hold together by this same bond which brought their lives into being together, and thus continue to constitute a real "family"; but the cousins of those children (and therefore the children of other parents), whom they themselves might marry, may not likewise be considered a part of that family. For this construction, it seems to us, would merge the "family" into the clan or tribe; and thus render the statutory definition meaningless.

There remains only the petitioner's argument that her first cousins have stood virtually in the relation of brothers and sisters to her from infancy because, early bereft of their own parents, they were taken into her family by her parents and maintained there until the death of those parents and since that time have been maintained largely by petitioner's own contributions, although in a separate household. Our only answer is that we are not trying to measure the mutual love and affection and lovingkindness which in such circumstances must have subsisted in this relation. The gratitude offered their kinswoman, the petitioner, by these dependents no doubt carries its own reward, but it must not affect our determination.

The circumstances here are unusual, and we must be governed by norms of conduct. See Cardozo, J., in *Welch* v. *Helvering*, 290 U. S. 111. Cousinly affection is as likely as not in ordinary circumstances to be replaced by its opposite, dislike and distrust. Indeed, the history of our country might have been different had Marshall and Jefferson not regarded each other with the distrustful eye which so often characterizes such a relation. We can only say, therefore, that the continuance of the kindness and care by a mere cousin under a sense of moral obligation, although wholly commendable, can not persuade us that the dependent cousin's status as a member of petitioner's family would not normally have ceased with the death of her aunt, the petitioner's mother. Kindness and care for a niece is one thing, that for a cousin another, and while a stranger may, through affinities of mind and character, become dearer to one than a brother, we must not set up a standard of family headship for tax purposes which goes beyond the confines of ordinary human conduct. The ordinary man expects things of those close to him in blood which he does not look for in a stranger, and, in turn, he assumes obligations for such persons as a matter of course. We can not define the "family" in terms of Christian charity but must stick to the less laudable standard of blood and self-interest. We are not persuaded, therefore, that petitioner could or did maintain a "family" by her continuing charities to her kinswomen.

Respondent allowed the deduction of all claims in respect of petitioner's cousins as dependents and denied only the family headship exemption. We think he was right.

*Decision will be entered for the respondent.*