Clarence Whitcomb Todd v. Commissioner.
Todd v. Commissioner
Docket No. 1977.
United States Tax Court
1944 Tax Ct. Memo LEXIS 43; 3 T.C.M. (CCH) 1221; T.C.M. (RIA) 44374; November 20, 1944
*43 Earl Bohannon, Esq., State Bank Bldg., Parsons, Kans., for the petitioner. Roy C. Hormberg, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income tax for the calendar year 1941. Deficiency was determined by the Commissioner in the amount of $43.15, the entire amount of which is in issue. The issue presented is whether certain expenses are personal, or deductible as incurred in business. [The Facts] All facts have been stipulated, and we adopt the stipulation by reference and find the facts therein set forth. The stipulation reads as follows: 1. Petitioner resides at 2714 Chess, Parsons, Kansas, and has owned his present residence since 1923. He is married, and has one dependent, a nephew who was 15 years old in 1941. His wife and nephew resided at 2714 Chess, Parsons, Kansas, throughout the year 1941. 2. Petitioner has maintained a residence in Parsons, Kansas, since 1907, and at all times since that date, except for the period of his service in the armed forces of the United States during the first World War. 3. Petitioner is a locomotive engineer employed by Missouri-Kansas-Texas Railroad (hereinafter referred to as the Railroad). *44 4. Petitioner was hired in the year 1907 at Parsons, Kansas, by the Railroad and has been continuously employed by the Railroad since 1907, except for the period of his service in the armed forces of the United States during the first World War. 5. Petitioner began working for the Railroad in the Roundhouse at Parsons. He became a locomotive fireman in 1909 and a locomotive engineer in 1917. 6. Petitioner is a member of the Brotherhood of Locomotive Engineers, Parsons Chapter, and his duties are fixed and determined by the operating requirements of the Railroad and the terms and conditions of the contract of employment between the Railroad and the Brotherhood of Locomotive Engineers. 7. Petitioner has at all times since 1907 been included in the Parsons seniority roster. 8. The right to hire all persons in the Parsons seniority roster is vested in the Railroad's superintendent at Parsons. 9. Petitioner's seniority rights are determined by his position in the Parsons seniority roster. 10. Vacant assignments are posted on bulletin boards at all terminals throughout the district, and applications for same must be sent to the crew dispatcher at Parsons who is in charge of the seniority *45 roster there. 11. Any engineer in the Parsons seniority roster who is dispatched (bumped) may displace (bump) any other engineer who is his junior in the roster by applying to the crew dispatcher at Parsons and claiming his seniority rights. 12. The contract with the Railroad provides that if any assignment becomes vacant and there is no application (bid) for it, the Junior man in the seniority roster must take it. 13. Subject only to preferences permitted by seniority and stipulated in their contracts of employment, all engineers in the Parsons seniority roster are required by their contract with the Railroad to proceed anywhere in District No. 4. 14. District No. 4 includes, among other places, Parsons, Kansas, and Muskogee, Oklahoma. 15. Prior to September 6, 1940, petitioner had no regular job but was on the extra list at Parsons. 16. On September 6, 1940, petitioner, as junior man in the roster, was assigned to a switch engine at Osage, Oklahoma, to work during the night. 17. On October 12, 1940, petitioner was assigned to a switch engine at Muskogee, Oklahoma, to work during the day. Petitioner bid for the vacant job at Muskogee because it was a daytime job and because *46 there was a better train service between Muskogee and Parsons and it was easier for him to return to Parsons on his weekly layoff day. 18. On August 17, petitioner returned to Parsons to get some rest and also to lay off the required 15 days in order to bump a junior engineer on a local freight between Parsons and Muskogee, but a senior engineer got the job, and petitioner returned to his switch engine job at Muskogee on September 4, 1941. 19. On November 18, 1941, petitioner obtained another local freight between Parsons and Muskogee. 20. The local freight between Parsons and Muskogee was discontinued on December 17, 1941, and on December 14, 1941, petitioner was assigned to a through freight between Parsons and Muskogee, remaining on this job through the end of the year. 21. Between January 1, 1941, and August 17, 1941, when petitioner was driving a switch engine at Muskogee, he returned to his residence at Parsons and spent his layoff day there on the following dates: January
6, 13, 20, 27
4 days
February
3, 10, 17, 24
4 days
March
3, 10, 17, 24, 31
5 days
April
7, 14, 21, 28
4 days
May
5, 12, 19, 20, 26
5 days
June
2, 9, 16, 23, 30
5 days
July
7, 14, 21, 28
4 days
August
4, 11
2 days
Total
33 days
*47 22. Between September 4, 1941, and November 18, 1941, when petitioner was driving a switch engine at Muskogee, he returned to his residence at Parsons and spent his layoff day there on the following dates: October
20, 27
2 days
November
17
1 day
Total
3 days
23. Between January 1, 1941 and August 17, 1941, petitioner was away from Parsons a total of 196 days driving a locomotive for the Railroad. 24. Between September 4, 1941, and November 18, 1941, petitioner was away from Parsons a total of 72 days driving a locomotive for the Railroad. 25. Between November 18, 1941, and December 31, 1941, when petitioner was driving a locomotive between Parsons and Muskogee, he made 19 round trips and was away from Parsons 19 days. 26. During the year 1941 petitioner was away from Parsons a total of 287 days driving a locomotive for the Railroad. 27. While at Muskogee driving a locomotive for the Railroad petitioner was under the orders of the district superintendent for the southern district, who is located at Muskogee. 28. During the year 1941 petitioner reserved a room at Muskogee and paid not less than $2.65 per week for a period of not less than 44 weeks, resulting *48 in an expenditure of not less than $116.60. 29. During the year 1941, for the 287 days petitioner was away from Parsons, he paid an average of not less than $1.05 per day for his meals, resulting in a total expenditure of not less than $301.35. 30. During the year 1941 when petitioner was away from Parsons driving a locomotive for the Railroad the cost of his meals and lodging was not in excess of $417.95. The question is whether the petitioner is entitled, under section 23 (a) (1) of the Internal Revenue Code to deduct expenses incurred by him for meals and lodging, as a locomotive engineer, or whether, on the other hand, under section 24 (a) (1) of the Internal Revenue Code, such expenses are denied deduction as personal expenses. The parties have each cited various cases involving situations not greatly dissimilar in principle to those herein in question. Thus, the petitioner relies, among other cases, upon Coburn v. Commissioner, 138 Fed. (2d) 763; Harry F. Schurer, 3 T.C. 544; and Wallace v. Commissioner, 144 Fed. (2d) 407; whereas the respondent, among a number of cases cited, *49 points to Walter M. Priddy, 43 B.T.A. 18; William Lee Tracy, 39 B.T.A. 578; and George W. Lindsay, 34 B.T.A. 840. As we said in the Schurer case, each case involving a deduction of traveling expenses must be decided upon its own facts. After examination of the facts here involved and consideration of the various cases cited, we have come to the conclusion and hold that the petitioner is entitled to deduction of the expenses claimed. In our opinion, the situation here is, in its most essential respects, analogous in principle to the Coburn and Schurer cases; for there the matter turned largely upon the character of the employment, whether temporary or permanent. We see the employment of the petitioner away from Parsons, Kansas, where he has resided for many years, as temporary in its nature. He has resided at Parsons practically continuously since 1907 and during that period he has been included in the Parsons "seniority roster," which determines his rights to employment by the Missouri-Kansas-Texas Railroad Co. under a contract with the Brotherhood of Locomotive Engineers, *50 Parsons Chapter, of which he is a member. The Railroad's superintendent at Parsons has the right to hire persons on the Parsons seniority roster. The petitioner, under his contract, is required to proceed anywhere in District No. 4, which includes among other places Parsons, Kansas, and Muskogee, Oklahoma. Prior to September 6, 1940, petitioner was on the "extra list" at Parsons. For a short period thereafter, he worked on a switch engine at Osage, Oklahoma, and after October 12, 1940, on a switch engine at Muskogee, Oklahoma. In August 1941, he spent some time at Parsons in an unsuccessful effort to obtain a position as engineer on a local freight train between Parsons, Kansas, and Muskogee, Oklahoma. In November 1941, he began work on a local freight train between Parsons and Muskogee, and upon its discontinuance was assigned to another freight train between the same stations and remained with it until after the end of the year. Throughout the year he returned at frequent intervals to his residence at Parsons and spent his layoff days there, being away from Parsons 287 days during the year 1941. The expenses for which deductions are asked are $116.60 for lodging and $301.35 for *51 meals. We are convinced from the facts stipulated herein that the petitioner's employment was in its nature temporary at any particular location, except Parsons where he resided, and that within the meaning of section 23 (a) (1) of the Internal Revenue Code, employment away from Parsons, Kansas, was such as to justify the allowance of the above expenses as traveling expenses, including meals and lodging, while away from home in the pursuit of a trade or business. Cases involving employment definitely arranged over long periods of time do not, in our opinion, offer helpful analogy here. Decision of no deficiency will be entered.