## KERR v. BOWERS.

### CLEGG v. SAME.

### Nos. 227, 228.

Circuit Court of Appeals, Second Circuit.

July 25, 1933.

William Osgood Morgan, of New York City (John W. Davis, William Osgood Morgan, and Montgomery B. Angell, all of New York City, of counsel), for appellants.

George Z. Medalie, U. S. Atty., of New York City (Samuel C. Coleman and Frank Chambers, Asst. U. S. Attys., both of New York City, and William E. Davis, Sp. Atty.,

Bureau of Internal Revenue, of Washington, D. C., of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

Two questions arise on these appeals. The first is whether the taxpayers realized taxable gains in 1920 from the sale of their stock, and the second is whether there was any warrant for the inclusion of interest in the amounts demanded by the collector and paid to him under protest.

■ The first question must be answered in the affirmative. It may be conceded that the taxpayers realized no gain in 1920 unless in that year they obtained control over the moneys representing the purchase price of their stock. But they obtained such control. As between themselves and the purchaser, it was complete, and they were the only persons concerned in carrying out the sale and purchase. It is true that Harriman and Ellis had arranged with the government officials to signal to them when the sale had taken place and the purchase money had been handed over, but neither the giving of the signal nor the subsequent interference with the possession of Kerr and Clegg by the government officials prevented the taxpayers from obtaining unrestricted and absolute possession at the time the sale was consummated. Before the officials served the notices and demands and took action to prevent the money from being removed, Harriman and Ellis had gone away from the bank with the certificates of stock, Kerr and Clegg had received the purchase money, had left it with Noble and Clegg's brother to be counted and put in a bag for transportation, and had reached the corridor outside of the bank and were about to leave the building. The case would have been different had the money been seized before Kerr and Clegg had got hold of it, or had they been physically prevented from taking it at the time their stock was delivered. Here the money was placed on the table for them, and they intended to, and did, appropriate it. They thus obtained title, possession, and control of the purchase money and realized a taxable gain from the sale of their stock. We can find nothing in the authorities relied upon by appellants to negative our conclusion. They were adequately distinguished by the District Judge, and seem to us to have no real bearing upon the issues.

It is not possible to justify the so-called assessment of August 27, 1920, or the seizure

of the taxpayers' property by virtue of it. No doubt the officials feared that Kerr and Clegg might take the proceeds of the sale to Europe and thus deprive the government of a large amount of taxes. But the danger of a governmental loss, if such danger existed, and the tax collecting zeal in a supposed righteous cause, could not validate the assessment of August 27, 1920. Indeed, it was no real assessment in law or in fact. According to the finding of the District Court, it was for income of the year 1920, and not 1919. Indeed, the assessment list bore the inscription "1920 Dummy S. A. 8/27/20" on its face, and, in spite of the form of some of the notices of lien and the statement of the Commissioner in his letter of October 1, 1920, we think the findings were justified. The large tax assessment of $1,501,288.20 against each taxpayer showed that future gains to be realized from the sales of stock on August 28 were the real basis of the assessments.

The only way of making an assessment or of collecting a tax in August, 1920, on income of that year was to employ the method provided for in section 250 (g) of the Revenue Act of 1918 (40 Stat. 1082). Under that section, if the Commissioner had feared that Kerr or Clegg was to remove his property from the United States, he might have declared "the taxable period for such taxpayer terminated at the end of the calendar month then last past," have given notice to the taxpayer, and demanded immediate payment. But the Commissioner had no intention of declaring the taxable period for either taxpayer terminated until September and for the simple reason that at no earlier date could he have included profits realized on August 28 in his emergency assessment. The assessment attempted on August 27 was beyond any statutory authority. It was in effect an assessment of a single transaction which had not taken place, and not an assessment of income for any taxable period provided for by law. Indeed, the trial court specifically found that "the Government officials, McCawley and the Solicitor of Internal Revenue arranged to have an assessment of income tax made against Kerr and Clegg computed upon the anticipated profit from the sale of their stock." No wonder that such an assessment was abated by the Commissioner.

As the assessments on August 27, 1920, were without statutory authority, no demand for the collection of taxes could rightfully be based upon them and no seizure of property could properly follow any demand. Furthermore, under R. S. § 3187 (26 USCA § 116),

property may only be distrained after failure to pay and an interval of "ten days after notice and demand." No such interval of time elapsed between the demand of payment on August 28 and the seizure on that date.

But these irregularities do not enable the plaintiffs to recover taxes which were undoubtedly due from them because of the gains resulting from the sales of their stock. The Commissioner made assessments on February 12, 1924, and the correctness of the calculations upon which they were based is not disputed. While these assessments were made without giving the taxpayers a prior hearing, hearings were subsequently had on the applications to abate, which were denied on December 16, 1924. Appeals were then taken to the Board of Tax appeals which acquired jurisdiction under section 283 (f) of the Revenue Act of February 26, 1926 (26 USCA § 1064(f), to determine the taxes. Even though the assessments by the Commissioner were irregular for lack of a preliminary hearing, he made assessments before June 3, 1924. When the applications to abate were rejected on December 16, 1924, after full hearings, it may be said that the Commissioner then finally determined the amount of the deficiency. The appeals to the Board of Tax Appeals were filed on February 11, 1925. Therefore we have a case where the tax was assessed before June 3, 1924, the deficiencies were finally determined after June 2, 1924, but before February 26, 1926, and the persons liable for the taxes appealed to the Board before February 26, 1926. Section 283 (f) covers such a case "ipsissimis verbis" and gives the Board of Tax Appeals authority to assess deficiencies arising under the Revenue Act here applicable. The Board upheld the deficiencies that had been determined by the Commissioner.

Section 283 (h) of the Revenue Act of 1926 (26 USCA § 1064 (h) provides that in computing the amount of taxes to be collected in cases within the scope of section 283 (f) interest shall be included upon the amount of taxes found to be due by the decision of the Board at the rate of 6 per cent. from February 26, 1926, to the date of notice and demand by the collector.

Whether the failure of the Commissioner to grant a preliminary hearing invalidated his original assessments of February 12, 1924, is quite immaterial. The Board decided the amount of the deficiencies after the Commissioner had assessed final deficiencies on December 16, 1924, after full hearings. The statute clearly covered such a case, and re-

quired the addition of the items of interest to the deficiencies assessed against Kerr and Clegg.

The assessment required under section 283 (b), Revenue Act 1926 (26 USCA § 1064(b), as a foundation for an appeal to the Board was not a valid assessment, but was any assessment actually made. By appealing from the rejection of their claims for abatement, the taxpayers opened all question of liability for 1920 taxes on the merits and became subject to pay the interest provided by section 283 (h) in the event of an adverse decision.

The Board held that interest at the rate of 1 per cent. per month and penalties could not be imposed where the assessments of February 12, 1924, had been made without prior hearings (5 B. T. A. at page 1101), for no legal demand could be based on such assessments.

Section 250 (e) of the Revenue Act of 1921 (42 Stat. 264) provides that: "If any tax remains unpaid after the date when it is due, and for ten days after notice and demand by the collector, then, * * * there shall be added as part of the tax the sum of 5 per centum on the amount due but unpaid, plus interest at the rate of 1 per centum per month upon such amount from the time it became due. * * *" Notice was given and demand was made on March 26, 1924, for payment of the taxes assessed on February 12, 1924. The Board properly held that such a notice and demand did not comply with the statute and did not justify the imposition of the penalty and interest provided by section 250 (e). Their decision was right, but can have no bearing on the present situation where section 283 (h) itself carries interest.

Judgments affirmed.