Charles CROWTHER and Ivy L. Crowther, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15994.

United States Court of Appeals Ninth Circuit.

July 29, 1959.

Morris M. Grupp, Leon Schiller, San Francisco, Cal., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, Lee A. Jackson, Robert N. Anderson, James P. Turner, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before CHAMBERS, HAMLIN and JERTBERG, Circuit Judges.

HAMLIN, Circuit Judge.

Charles Crowther and Ivy L. Crowther, hereinafter called petitioners, received from the Commissioner of Internal Revenue notices of deficiency in income tax for the years 1951 and 1954. Within 90 days thereafter petitioners filed petitions in the Tax Court of the United States, asking for a redetermination of those deficiencies. Following a trial and decision of the Tax Court, petitioners filed a petition for a review by this Court. No question is raised as to the jurisdiction of the Tax Court nor of this Court.

The case involves income tax deductions for the years 1951 and 1954. The two cases were consolidated for trial in the Tax Court. The Internal Revenue Act of 1939 is applicable to the 1951 tax return, and the Internal Revenue Act of 1954 is applicable to the income tax return of 1954. However, there is no appreciable difference between the pertinent provisions in the 1939 or in the 1954 Act. Therefore the same general principles govern the two cases.

Petitioners make generally two claims of error on the part of the Tax Court. We will discuss the second claim first.

Petitioners in their complaint filed in the Tax Court made allegations in some detail that the Commissioner acted in an arbitrary manner in finding the deficiencies in petitioners' returns, in failing to furnish petitioners with a 30-day letter (not required by law), and in failing to make a proper investigation before sending out the 90-day deficiency notices. No evidence was offered by petitioners in support of these allegations.

█ The propriety of the motives of the Commissioner in giving the notice of deficiency is immaterial. Kerr v. Bowers, 2 Cir., 1933, 66 F.2d 419; Greene v. Commissioner, 1925, 2 B.T.A. 148; Southern California Loan Association, 1926, 4 B.T.A. 223; Levine Bros. Co. v. Commissioner, 1926, 5 B.T.A. 689. It was the duty of the Tax Court to determine the amount of taxpayers' deficiencies, if any, regardless of the motive of the Commissioner in setting forth these deficiencies. We find no error on the part of the Tax Court in refusing to consider this claim.

The important question involved in this case is whether certain automobile and jeep expenses incurred by Charles Crowther, hereinafter called taxpayer, in traveling from his residence in Fort Bragg to various job sites in 1951 and 1954 are deductible by him, or whether, as the Tax Court found, those expenses are divisible into (1) personal expenses of "commuting" to his work and (2) business expenses of transporting tools and equipment used by him in his employment.

The taxpayer lived in Fort Bragg, California, with his wife and three children during all of the time in question. In 1951, the two older children were of school age and attended schools in Fort Bragg.

In 1951 taxpayer was a "faller" and a "bucker" who worked in the general area surrounding Fort Bragg. In his occupation he was required to go to various log sites or "layouts" to fall trees located thereon, and to cut these trees into logs. His compensation was received from various lumber companies on the basis of

the number of board feet of trees which were felled and cut into logs. The various places of his operation were determined by the lumber companies owning the timber. His job was to cut all the timber upon a particular log site.

In 1951 he was employed by the Rockport Redwood Mills, whose main office was at Rockport, California, a small town completely owned by the lumber company, located about 29 miles north of Fort Bragg. The log sites where taxpayer did his work were located some 13 to 15 miles from Rockport, and taxpayer was required to go over private logging roads to reach the log site. One road into the timber country was used by him in good weather, and in winter time another road through the timber was used. In 1951 he traveled daily about 40 miles each way between Fort Bragg and the log sites, consuming approximately four hours per day. He had no definite hours of work. Under the terms of his employment he supplied his own transportation and tree and log-cutting equipment which consisted of chain saws, chains, bars, spring boards, gunsticks, axes, sledge hammers, wedges, safety hats, caulk boots, and various minor tools.

In 1951 he worked on three separate log sites about five or six miles apart from each other. The practice was to work upon a particular "lay out" until it was all logged out. The company then directed him to work at another log site until that was logged out.

No living accommodations were available in the woods at any of the log sites worked by the taxpayer in either 1951 or 1954.

In the actual operations of bucking and falling timber, two sized chains are used and two sizes of bars. It is necessary to have extra bars and chains because many times they are bent or broken when a tree starts to fall. It was necessary to have extra equipment in order to keep the work moving. This extra equipment and spare parts were generally carried in an automobile. In the operations, tools were frequently broken or bent, axe handles broken and

axes dulled, and parts were broken on the saws. All these had to be taken back to Fort Bragg for repair or replacement. The evidence showed that very seldom did the taxpayer leave the woods without bringing back something to be repaired. When some part of the saw was broken, the taxpayer would take that off, bring it back to town and either repair it himself or buy a new part for it if it was not repairable. Carried in the automobile, also, daily back and forth from the job, were extra sledge hammers, extra axes, oil for lubricating the chain, approximately ten wedges, and various minor tools.

For the first part of 1951, the taxpayer used a 1947 Cadillac to carry this equipment and to drive back and forth from Fort Bragg to the log site. About the middle of the year he purchased for $125 an old Plymouth and used that as a means of conveyance for the greater part of the latter half of the year. However, when the Plymouth broke down and could not be used, taxpayer used the Cadillac. In December of 1951, the company discontinued its logging operations for the year and taxpayer was laid off.

In 1954, taxpayer was employed in the first part of the year for the Christie Company, and worked at two different log sites during that period. He daily traveled approximately 30 to 35 miles in an easterly direction from Fort Bragg in the first part of 1954 to each of these log sites.

In the second half of the year, he worked for another company at three different log sites. All of these were in a southeasterly direction from Fort Bragg and were approximately 30 miles from Fort Bragg. His operations in 1954 were similar to those in 1951, except that he used a jeep to transport the tools and himself to the various log sites. On some occasions in 1954 when the jeep was not operating, he used the 1947 Cadillac. In order to get to each of the log sites, taxpayer was required to use a public road for a portion of the way and to then proceed over about 6 to 9 miles of logging road for the balance of the trip.

At each of the log sites worked by the taxpayer in 1951 and 1954, the logging operations were discontinued at the instance of the company.

No public transportation was available into the woods to get to the log sites, and no transportation was provided by any of the companies for which the taxpayer worked. During 1954 taxpayer worked at either four or five different log sites. It apparently could not be determined in advance just how long the work would last at each log site.

The pertinent provisions of the 1939 Internal Revenue Code are as follows:

Section 23.

"Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses.

"1. Trade or business expenses.

"A. In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *

\* \* \* \* \* \*

"(l) Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income." 26 U.S.C.A. § 23.

Section 24. Items Not Deductible.

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—

"(1) Personal, living, or family expenses, * * *." 26 U.S.C.A. § 24.[1]

The Tax Court held that the taxpayer's use of the automobiles and jeep to travel between Fort Bragg and the log sites was for the dual purpose of commuting between his home and his work and for transporting tools and equipment used by him in his employment. The Tax Court further held that to the extent that the automobile and jeep expenses in question represented commuting expenses of the taxpayer, they were personal expenses and were not deductible as ordinary and necessary business expenses.

The question of the deductibility of traveling expenses under various circumstances has been considered in a great number of cases.

In Emmert v. United States, D.C.Ind. 1955, 146 F.Supp. 322, the plaintiff, James A. Emmert, was a judge of the Supreme Court of the State of Indiana. By law he was required to reside in the judicial district from which he was elected. However, he was required to attend the sessions of the Court which were held in Indianapolis, in another judicial district, some 30 miles away. The Court held that it was proper for the plaintiff to deduct the traveling expenses from his home town to Indianapolis. In the calendar year 1948 (the year in question) Judge Emmert made 221 such trips.

In Schurer v. Commissioner, 1944, 3 T.C. 544, where the employment of the taxpayer away from his home has been "temporary," traveling expenses have been permitted to be deducted. Thus, in Schurer petitioner was a journeyman plumber resident in Pittsburgh, Pennsylvania, where he had a wife and family. In 1941 he was requested by his union to work for four weeks in another Pennsylvania town. Shortly thereafter, he accepted employment from his union at Aberdeen, Maryland, where he worked for nine weeks. Shortly thereafter, he was requested to go to Morgantown, West Virginia, to assist in the construction of an ammonia plant. He worked

---

[1] These provisions were carried over, without substantive change, to the 1954 Code. See 26 U.S.C.A. §§ 162(a) and 162(a)(2); 26 U.S.C.A. § 167(a).

there for a period of 33 weeks after which he returned to Pittsburgh. The Commissioner disallowed his expenses at these three places and his traveling expenses from Pittsburgh to these locations and back again. The Tax Court held that the petitioner was entitled to deduct from his gross income the amount spent for meals and lodging and for railroad and bus fares while away from his home in Pittsburgh.

In Leach v. Commissioner, 1949, 12 T.C. 20, the facts show that the petitioner was employed during the year 1945 by a construction company to erect structural steel. He had no station or regular place of employment during 1945. His employment required him to be away from his home for 49 weeks during 1945, and to be, for short periods ranging from a few weeks to several months, at various places so remote from his home that he had to rent lodging for himself at each place. The Court said:

> "He could not move his wife and child to these places because of the shortness and indefiniteness of the duration of each job and the unavailability of accommodations."

The Court said:

> "The petitioner had no regular post of duty or place of regular employment during 1945 away from Florence which could be called his 'home' or which he could be required to regard as his home for the purpose of Sec. 23(a) (1) (A). None of the places at which he had temporary employment during that year was his home. The expenses (lodging only) were unavoidable, reasonable and necessary expenses while away from his 'home' in the pursuit of his trade."

In York v. C. I. R., 1947, 82 U.S.App. D.C. 63, 160 F.2d 385, 386, the petitioner was a lawyer who went from Atlanta, Georgia, to Washington, D. C., to work. He later brought his family to Washington. The Court held that his expenses in Washington until the family arrived, and the expense of moving his family were *not* deductible. The Court

said they were not incurred (1) " 'in carrying on a trade or business,' or (2) 'for the production or collection of income.' "

The subject of deductibility of traveling expenses was considered by the Supreme Court of the United States in Commissioner of Internal Revenue v. Flowers, 1946, 326 U.S. 465, 66 S.Ct. 250, 252, 90 L.Ed. 203. The Court there, after discussing the particular facts of that case, set out three conditions that should be fulfilled to entitle a taxpayer to a deduction for this reason. The Court stated:

> "Three conditions must thus be satisfied before a traveling expense deduction may be made under § 23 (a) (1) (A):
>
> "(1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling.
>
> "(2) The expense must be incurred 'while away from home.'
>
> "(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade."

Concerning the meaning of the word "home" as used in the statute, the Court stated:

> "The meaning of the word 'home' in § 23(a) (1) (A) with reference to a taxpayer residing in one city and working in another has engendered much difficulty and litigation. 4 Mertens, Law of Federal Income Taxation (1942) § 25.82. The Tax Court and the administrative rulings have consistently defined it as the equivalent of the taxpayer's place of business. See Barnhill v.

Commissioner, supra, 4 Cir. [148 F.2d 913, 159 A.L.R. 1210]. On the other hand, the decision below and Wallace v. Commissioner, 9 Cir., 144 F.2d 407, have flatly rejected that view and have confined the term to the taxpayer's actual residence. See also Coburn v. Commissioner, 2 Cir., 138 F.2d 763.

"We deem it unnecessary here to enter into or to decide this conflict. The Tax Court's opinion, as we read it, was grounded neither solely nor primarily upon that agency's conception of the word 'home'. Its discussion was directed mainly toward the relation of the expenditures to the railroad's business, a relationship required by the third condition of the deduction. Thus even if the Tax Court's definition of the word 'home' was implicit in its decision and even if that definition was erroneous, its judgment must be sustained here if it properly concluded that the necessary relationship between the expenditures and the railroad's business was lacking. Failure to satisfy any one of the three conditions destroys the traveling expense deduction."

The question was again considered in Peurifoy v. Commissioner of Internal Revenue, 1958, 358 U.S. 59, 79 S.Ct. 104, 105, 3 L.Ed.2d 30. There, three petitioners were employed as construction workers at a site in Kinston, North Carolina, for continuous periods of 20½ months, 12½ months and 8½ months respectively, ending in the year 1953. There was no evidence that the employment of any petitioner was terminated by the employer, two having quit for personal reasons and the third for an undisclosed reason. Each of the petitioners maintained a permanent residence elsewhere in North Carolina. In reporting his adjusted gross income for 1953, each petitioner deducted amounts expended for board and lodging and tips during the period of employment there, and for transportation from Kinston to his permanent residence upon leaving that employment. These deductions were disallowed by the Commissioner. Thereafter, the Tax Court rendered a decision in favor of the petitioners. The Court of Appeals reversed. The Supreme Court stated:

"Generally, a taxpayer is entitled to deduct unreimbursed travel expenses under this subsection only when they are required by 'the exigencies of business.' Commissioner of Internal Revenue v. Flowers, supra * * *

"To this rule, however, the Tax Court has engrafted an exception which allows a deduction for expenditures of the type made in this case when the taxpayer's employment is 'temporary' as contrasted with 'indefinite' or 'indeterminate.' "

The Court further stated:

"Resolution of this case as presented to us turns, therefore, upon a narrow question of fact—Was the petitioners' employment 'temporary' or 'indefinite'? The Tax Court, stating that 'each case must be decided upon the basis of its own facts and circumstances,' * * * found that their employment was temporary. The Court of Appeals, also recognizing that the question was 'one of fact,' held that on the record the Tax Court's finding of temporary employment was 'clearly erroneous.'

\* \* \* \* \* \*

"In reviewing the Tax Court's factual determination, the Court of Appeals has made a fair assessment of the record. * * * That being so, this Court will not intervene."[2]

---

2. In the Peurifoy case, three Justices dissented. Justice Douglas, speaking for the minority, stated:

"I disagree with the Commissioner's contention that 'home' is synonymous with the situs of the employer's business. Such a construction means that the taxpayer who is forced to travel from place to place to pursue his trade must carry his home on his back regardless of the fact that he maintains his family at an abode which meets all accepted defini-

The question of the deductibility of traveling expenses under various circumstances was discussed in Treasury Department Publication No. 300 (Par. 76, 425) 1956 Prentice-Hall Federal Taxes. There, the Treasury Department stated that the

"* * * cost of transportation between your residence and your place of employment or business, including commuting expenses, are not deductible *except in special circumstances*" (Emphasis supplied)

and that

"* * * travel expenses do not include * * * the cost of commuting between the hotel or other place where meals and lodging are obtained and the business location where the services are performed,"

but that

"* * * however, if the location where the services are performed while on a business trip is in a remote area and you must stay at a considerable distance therefrom (for example, 10 to 15 miles) in order to obtain necessary living accommodations, the expense incurred for necessary transportation may be deducted.

"If you are required to work at a temporary or minor location outside the general area which is your 'tax home', your transportation expenses for daily round-trips from that area to such temporary or minor post of duty are deductible."

It has been consistently held that a taxpayer's "commuting" expenses from his residence to his place of employment are not deductible. Commissioner of Internal Revenue v. Flowers, 1946, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203; Ney v. United States, 8 Cir., 1948, 171 F.2d 449; Commissioner of Internal Revenue v. Janss, 8 Cir., 1958, 260 F.2d 99; Donnelly v. Commissioner, 2 Cir., 1959, 262 F.2d 411. However, Webster defines "commute" to mean "to travel by use of a commutation ticket, especially daily to and from a city; hence, to travel especially daily to one's work back and forth between a city and one's suburban residence".

The fact that a taxpayer chooses to live in a particular city or location which is different from where he works does not permit him to take a tax deduction for travel between his work and his residence. An exception, however, has been made to the above rule when the work of a taxpayer has been temporary as distinguished from indefinite.

This was the distinction that was made by the Circuit Court in Peurifoy and upheld by the Supreme Court.

No case involving the same factual situation as is shown in the instant case has been brought to our attention.

In this case, there was the necessity of traveling back and forth to the "lay-out", although the necessity was caused not by the law, as in Emmert, but by the lack of living accommodations at the log sites and by the necessity of carrying tools back and forth to be repaired. Here, also, the work locations were temporary, there being seven of these locations in the two-year period. Here, also, the length of time of the work at the various locations was not determined by the taxpayer, but was determined by his employer, depending upon the amount of logs to be cut.

Here, also the taxpayer did not have a choice of living at the job-site or at his regular home as the petitioner did in Flowers, supra, and in York, supra, and in Ney, supra.

The contention of the respondent that the tax home of the taxpayer was at the

---

tions of 'home'. I do not believe that Congress intended such a harsh result when it provided a deduction for traveling expenses. These construction workers do not have a permanent locus of employment as does the merchant or factory worker. They are required to trav-

el from job to job in order to practice their trade. It would be an intolerable burden for them to uproot their families whenever they change jobs, if those jobs happen to take them to a different locality."

seven different layouts in the woods does not appear realistic to us. His residence in Fort Bragg was in a central location to all of the layouts; to some he had to go north, to others he had to go east, to others he had to go south from Fort Bragg.

The necessity of daily transporting his tools from his layout in the woods, to Fort Bragg, for the purpose of repair or replacement, appears important to us. This was a business necessity, rather than a personal necessity. Of course, he could not know what part or tool would break or when it would require repair or replacement. Whenever that happened, however, he was required to transport it by jeep or car for such repairs or replacement as might be necessary. His work stopped if this was not done.

We believe that the automobile and the jeep expenses in this case came within the language of Sec. 23.

The automobile and jeep were used "while away from home in the pursuit of a trade or business." They were property "used in the trade or business." The operating expenses of the automobile and jeep were "ordinary and necessary expenses paid or incurred * * * in carrying on the trade or business of the taxpayer." We do not believe that they could be called "personal living or family expenses."

We believe, further, that the three requirements set out in Flowers, supra, have been fulfilled, and that the travel expenses here have been required, as said in Flowers, by "the exigencies of business."

We believe that "special circumstances" mentioned in Treasury Department Publication No. 300 exist in this case.

The decision is reversed and the case is remanded to the Tax Court with directions to determine and allow to petitioners, for 1951 and 1954, the amount of auto and jeep expenses incurred in traveling in those years from Fort Bragg to the various "lay outs" at which taxpayer worked.