Lester C. Pridgen and Marjorie H. Pridgen v. Commissioner.
Pridgen v. Commissioner
Docket No. 2913-67.
United States Tax Court
T.C. Memo 1969-138; 1969 Tax Ct. Memo LEXIS 162; 28 T.C.M. (CCH) 717; T.C.M. (RIA) 69138; June 30, 1969, Filed *162 Held, petitioners have failed to show that they are entitled to deductions claimed in their Federal income tax returns for the calendar years 1963 and 1964 for contributions, taxes, medical and dental expenses, outside salesman expenses, and certain bankruptcy losses in excess of those allowed by the respondent. Lester C. Pridgen, pro se, 55 W. 55th St., New York, N. Y. Richard J. Mandell, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The respondent determined deficiencies in the income taxes of the petitioners for the calendar years 1963 and 1964 in the respective amount of $1,684.49 and $904.82. The respondent has conceded that the petitioners are entitled to capital losses in the amount of $1,000 for each of the taxable years 1963 and 1964 with respect to losses sustained by petitioners as a result of the bankruptcy of Royaloy, Inc., a corporation owned by the petitioners. The sole issue thus remaining for our decision is whether the petitioners are entitled to certain itemized deductions and a deduction for certain outside salesman expenses for the taxable years 1963 and 1964 in the respective amounts of $8,051.42 *163 and $5,615. Findings of Fact The legal residence of Lester C. and Marjorie H. Pridgen (hereinafter referred to as petitioners) at the time of filing their petition herein was New York, New York. Their joint Federal income tax returns for the calendar years 1963 and 1964 were filed with the district director of internal revenue at New York, New York. Two Federal income tax returns reporting the petitioners' tax liability were processed by the Internal Revenue Service for each of the taxable years involved herein. Petitioners claim that they filed only one return for each year, but that they were subsequently 718 requested to deliver, and did in fact hand over, duplicate copies of these returns to the collection division of the Manhattan district director's office. However this may be, both of the returns processed for each year were identical in every respect. In 1951, the petitioners purchased the stock of Royaloy, Inc. (hereinafter referred to as Royaloy). Royaloy subsequently went into bankruptcy. As a result, the petitioners sustained losses with respect to amounts invested in the capital stock of Royaloy and certain capital contributions and loans made to Royaloy. *164 On both of the Federal income tax returns processed for the taxable year 1963, the petitioners claimed the following deductions: Contributions
$ 270.00
Taxes
548.10
Medical and dental expense
842.40
Other deductions:
Loss due to bankrupt busi- ness $3,902.95
Expenses - outside sales- man [1] 2,487.97
Total other deductions 6,390.92
Total itemized deductions
$8,051.42
In addition, on both of the Federal income tax returns processed for the taxable year 1964, the petitioners claimed deductions, as follows: Medical and dental expense
$ 570.00
Contributions
200.00
Taxes
395.00
Other deductions:
Loss due to bankruptcy of Royaloy, Inc. 2,300.00
Total itemized deductions
$3,465.00
Deductions from gross income:
Outside salesman expenses 2,150.00
Total deductions
$5,615.00
*165 The respondent disallowed the foregoing deductions for 1963 and 1964 in entirety on the grounds that petitioners failed to substantiate any portion thereof. He allowed the standard deduction for the years 1963 and 1964 in lieu of the itemized deductions claimed by petitioners. As previously mentioned, the respondent subsequently conceded that petitioners are entitled to capital losses with respect to the bankruptcy of Royaloy in the amounts of $1,000 for each of the years involved herein. No evidence was introduced at the trial of this case which would permit any finding that petitioners were entitled to more. Opinion Despite the repeated warnings of this Court, the petitioners did not produce one shred of evidence to substantiate their claim to deductions for contributions, taxes, medical and dental expenses, and outside salesman expenses for the taxable years 1963 and 1964. They did introduce two exhibits pertaining to the losses sustained by them as a result of the bankruptcy of Royaloy. But in light of the respondent's previous concession that petitioners are entitled to capital losses of $1,000 for each of the two years in controversy, this evidence alone would seem to be *166 superfluous. The petitioners have been given the maximum net capital loss allowable for each year under the limitation set forth in section 1211(b) [2] of the Internal Revenue Code of 1954, and they have not introduced any evidence, nor have they contended on brief, that the Royaloy losses should be characterized as ordinary business losses instead of capital losses. It is axiomatic that the respondent's determination carries a presumption of correctness, and the burden of overcoming such presumption rests squarely on the shoulders of the taxpayer. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 32, Tax Court Rules of Practice. Furthermore this Court has frequently ruled, unfortunately for the petitioners, that a taxpayer's tax returns do not constitute the type of proof required to overcome the presumptive *167 correctness of the respondent's determination. Seaboard Commercial Corporation, 28 T.C. 1034, 1051 (1957); Louis Halle, 7 T.C. 245, 247-248 (1946), affirmed 175 F. 2d 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949 (1950); Watab Paper Co., 27 B.T.A. 488, 506 (1932), appeal dismissed 68 F. 2d 998 (C.A. 8, 1933). 719 Furthermore, careful scrutiny of the record fails to reveal any evidence to support petitioner's contention that respondent's determination was arbitrary and excessive, nor does the record reflect any other ground that would support petitioners' contention that the burden of proof in this case should be placed upon the respondent. Inasmuch as petitioners were representing themselves in this cause and were without the benefit of legal counsel, the Court made a special effort to explain to petitioners that it was incumbent upon them to produce some evidence relating to the deductions disallowed by the respondent. Nevertheless, the petitioners chose to rest their case on other grounds noted below. We therefore have no recourse but to hold that the petitioners have failed to establish that *168 they are entitled to any portion of the deductions claimed by them for contributions, taxes, medical and dental expenses, and outside salesman expenses for the taxable years 1963 and 1964. In a portion of their opening brief entitled "Statement of the Nature of the Controversy," the petitioners summarize the points relied upon by them to rebut the respondent's determination herein. These points, as they appear in petitioners' brief, are set forth below: 1. The failure of the Commissioner to make a correct determination based upon cancelled checks, books and records made available to I. Reventas, IRS Agent. 2. The failure of the Commissioner to summons the books and records of Royaloy, Inc., bankrupt, that were in possession of Robert Herzog, representing the creditors in Bankruptcy, to substantiate the taxpayers' claims to allowable deductions. 3. The failure of the Commissioner to audit the allowable deductions for 1963 and 1964 as presented for audit unless the taxpayer agreed to sign a form consenting to the disallowance of the bankrupt business deductions. 4. The erroneous, arbitary, and excessive determination made by the Commissioner, as a disallowance in full because *169 taxpayers refused to waive their rights to allowable deductions for Bankruptcy losses and would not sign a consent to disallowance of bankrupt losses. 5. The failure of the Commissioner to properly make his determinations upon the original 1963 and 1964 Returns, which original Returns the taxpayers properly filed. 6. The illegal determinations made by the Commissioner on the 1963 and 1964 duplicate Returns taken from the taxpayers by IRS Collections and erroneously filed by the Commissioner. 7. The acts of the Commissioner in implying fraud without proof of fraud. As regards the petitioners' first contention, it appears from the somewhat muddled record on this point that the purported offering of documentary evidence to an internal revenue agent occurred in connection with an examination of the petitioners' returns for years prior to those involved in this case. In any event, the petitioners failed to produce such documentary evidence in the proceedings before this Court, and we of course cannot decide this case on the basis of something which may or may not have been proffered to the Internal Revenue Service. With respect to the petitioners' fifth and sixth contentions, *170 we are unaware of, and petitioners do not cite, any legal authority holding that respondent's deficiency determination must be made upon the original returns filed by the taxpayer. Petitioners do cite the cases of E. L. Harris, 5 B.T.A. 1026 (1927); and Powell Coal Co., 12 B.T.A. 492 (1928). These cases involve the filing of amended returns which reflected figures that varied from those reported on the original returns. On the other hand, in the instant case we have two returns identical in every respect, both of which were, for reasons unbeknownst to us, processed by the Internal Revenue Service. Thus, it appears that as a practical matter, it is immaterial which return was used by respondent in making his determination since the so-called "original" and "duplicate" returns for each of the two years involved reflected precisely the same information with respect to every item thereon. The main thrust of petitioners' remaining contentions is directed at the manner and methods employed by respondent in making his deficiency determination. We have decided the correctness of respondent's determination, and indeed, it is neither the duty nor province of this *171 Court to go behind that determination. It has long been settled that we are without jurisdiction to pass on the propriety of either the motives or the administrative policies and procedures employed by the respondent in arriving at his determination. Ben Perlmutter, 44 T.C. 382, 398-399 (1965), affirmed, 373 F. 2d 45 (C.A. 10, 1967); Philip F. Flynn, 40 T.C. 770, 772-773 (1963); Charles Crowther, 720 28 T.C. 1293, 1301 (1957), affirmed on this point 269 F. 2d 292, 293 (C.A. 9, 1959); Cleveland Home Brewing Co., 1 B.T.A. 87, 91-92 (1924). In Charles Crowther, supra, at page 1301, we said: We have jurisdiction to consider and determine, and have considered and determined in the light of the evidence of record, the correctness of the respondent's determinations of the deficiencies here involved. But we are without jurisdiction to consider and determine the propriety of the respondent's motives in making such determinations, H. F. Kerr, 5 B.T.A. 1073, or the propriety of the administrative policy and procedures he employed prior to making such determinations, Clois L. Greene, 2 B.T.A. 148; *172 Southern California Loan Association, 4 B.T.A. 223; Levine Brothers Co; Inc., 5 B.T.A. 689. Although the record is unclear on this point, petitioners also appear to contend that the respondent has failed to credit them with a refund to which they are entitled. However, they failed to introduce any evidence which could form any basis for this Court to make a determination with respect to this contention. In view of the foregoing, we conclude that the respondent correctly determined that the petitioners are not entitled to any amount for the deductions claimed by them on their tax returns for the taxable years 1963 and 1964, with the exception of capital losses in the amounts of $1,000 for each of these 2 years. Decision will be entered under Rule 50. Footnotes
1. On separate sheets attached to the two returns processed for 1963, the petitioners itemize their unreimbursed outside salesman expenses, and show the total of such expenses to be $2,484.97. However, on the reverse side of the returns themselves they report the amount claimed for outside salesman expenses to be $2,487.97, the figure set forth above.↩
2. SEC. 1211. LIMITATION ON CAPITAL LOSSES. * * * (b) OTHER TAXPAYERS. - In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the taxable income of the taxpayer or $1,000, whichever is smaller. * * *.↩