GEORGE A. HELLWARTH and JULIE M. HELLWARTH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hellwarth v. Commissioner
Docket No. 1127-79.
United States Tax Court
T.C. Memo 1981-155; 1981 Tax Ct. Memo LEXIS 589; 41 T.C.M. (CCH) 1207; T.C.M. (RIA) 81155; March 31, 1981. George A. Hellwarth, pro se. Ivan A. Gomez, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1975 in the amount of $ 127. The issues for decision are (1) whether $ 325 of dividends received by petitioners on stock held in George A. Hellwarth's account with a stock brokerage firm is includable in petitioners' income; and (2) is the notice of deficiency sent to petitioners by respondent invalid because of action by agents of respondent in connection with replies to petitioners' request stated to be made under the Privacy Act of 1974, 5 U.S.C. sec. 552a (1974). FINDINGS OF FACT Petitioners George A. and Julie *590 M. Hellwarth, husband and wife, who resided at Deerfield Beach, Florida at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1975 with the Internal Revenue Service Center at Chamblee, Georgia. During the year 1975, George A. Hellwarth (petitioner) owned 44 shares of International Business Machines Corporation (IBM) stock which were registered in his name. During the year 1975 petitioner received $ 290 of dividend income from dividends with respect to this 44 shares of stock which he reported on his Federal income tax return for that year. During 1975 petitioner had a brokerage account at the Boca Raton office of Loeb, Rhoades & Co. Petitioner was issued monthly statements with respect to his brokerage account. The records of the brokerage firm show that during the entire year 1975 the brokerage firm held in its name 50 shares of IBM stock for petitioner and that petitioner's brokerage account was credited with dividends on this stock in the amount of $ 325. These amounts were credited to petitioner's account as follows: March 10, 1975
$ 75.00
June 10, 1975
75.00
September 10, 1975
87.50
December 10, 1975
87.50
$ 325.00
*591 Petitioners on their Federal income tax return for 1975 did not include any part of the $ 325 of dividends credited to their brokerage account with respect to the 50 shares of IBM stock held for petitioner by Loeb, Rhoads & Co. There was filed with respondent by Loeb, Rhoades & Co. an appropriate form reporting as credited to petitioner the $ 325 of dividend income with respect to the 50 shares of IBM stock it held for petitioner. Under date of December 9, 1977, petitioners received a document, the letterhead of which showed Internal Revenue Service, Chamblee, Georgia 30006, entitled "REQUEST FOR VERIFICATION OF UNREPORTED INCOME." This document was unsigned and, in part, read as follows: PAYERS OF SALARIES, DIVIDENDS, INTEREST, ETC., ARE REQUIRED TO REPORT SUCH PAYMENTS TO THE INTERNAL REVENUE SERVICE. REPORTS WE HAVE RECEIVED SHOW PAYMENTS TO YOU THAT WERE NOT REPORTED ON YOUR INCOME TAX RETURN FOR 1975. OUR SUMMARY OF THE AMOUNTS REPORTED TO US BEGINS ON PAGE 3 OF THIS MESSAGE. PLEASE COMPARE IT WITH YOUR RECORDS TO DETERMINE ITS ACCURACY, BECAUSE WE HAVE USED IT, WITH YOUR RETURN, TO FIGURE A PROPOSED ADJUSTMENT THAT INCREASES YOUR TAX LIABILITY, AS SHOWN ON PAGE 2. *592 Attached as page 3 was a transcript of information received by the Internal Revenue Service which showed that petitioner received $ 290 of dividends directly from IBM and in addition received $ 325 of dividends from Loab, Rhoades & Co.
Under date of January 8, 1978, petitioner addressed a letter to the Internal Revenue Service, P.O. Box 47-413, Doraville, GA 30362, in which he referred to the "unsigned letter dated 12-09-77, apparently generated by a computer, which has a different return address than the return envelope that was supplied with the letter." Petitioner in this letter requested verification that the request for information was from a properly identified agent of the Internal Revenue Service; whether the request was "charging that my 1975 Form 1040 is incorrect or wrong in any way;" if the request involved a disclosure of information, was such disclosure "requested of me voluntary or mandatory;" whether the request was a form of audit of his 1975 return and to provide a complete disclosure of the "IRS audit procedures or guidelines, both administrative and legal," and to "include IRS Publication 556;" what was the "principle purpose" for which the information was *593 to be used; what were the routine uses of such information and what would be the effects on him if he were to provide the requested information. Under date of August 1, 1978, petitioners received a letter from the Internal Revenue Service Center, Southeast Region, enclosing a copy of a report giving a detailed computation of petitioners' tax. The letter was on a preprinted form, and checked as the reason for sending the report was the box "We have considered the information you gave us, but find that it does not justify a change in our proposed adjustment. Our reasons are given in the enclosed report." There was enclosed with this letter a document giving complete instructions of petitioners' right to submit additional information, request a meeting with an examiner at a district office, request a conference with a conferee at a district office, and for further appeal. The name of a person to call and a telephone number was given in the letter. Under date of August 28, 1978, petitioner addressed a letter to the individual named as the person to call, stating "I am shocked and dismayed at receiving a form letter this month over the printed name of Albert K. Norris from your *594 office." To this letter he attached a copy of his letter dated January 8, 1978, and requested that the information requested in the prior letter be furnished promptly. He further stated in this letter: If I have not received these answers within 30 days from the above date, or if I have not heard from you otherwise concerning your intention to respond to your obligations under the law, then by this notice I demand a meeting with an examiner before witnesses and electronic recording equipment to pursue obtaining the answers to these and other appropriate questions. Petitioner had further correspondence with the Internal Revenue Service, and on September 5, 1978, addressed a letter to the Internal Revenue Service Center, Chamblee, Georgia, to the attention of Suzanne K. Reneau, Disclosure Officer, in which he stated in part: Thank you for your prompt but puzzling reply of July 7, 1978, to my response of May 19, 1978. I continue to be uncertain of any of the procedures of the IRS, especially by those computers or persons that initiated the current action against me and which or who will not give timely answers to my letters containing even puzzling responses like yours. This *595 letter referred to the questions initially asked in petitioner's letter of January 8, 1978, to which petitioner did not consider he had received an adequate reply and further asked for additional information. He also requested a printed copy of the Internal Revenue Service manual which he stated that the Revenue Service had offered to send him. Under date of October 27, 1978, respondent issued to petitioners the deficiency notice from which the petition in this case was filed. This deficiency notice shows a deficiency in petitioners' tax of $ 127 because of petitioners' omission from the return of $ 325 of dividends properly includable as income. OPINION Section 61(a), I.R.C. 1954, [1] provides that-- gross income means all income from whatever source derived, including (but not limited to) the following items: (7) Dividends; Petitioner in his brief makes some vague reference to whether he derived-- taxable income of $ 325.00, upon which an indirect tax should be imposed by Title 26, but which tax was not voluntarily *596 self-assessed and paid by Petitioner for 1975? He also makes some vague reference to his rights under the Fifth Amendment of the United States Constitution against self-incrimination and a contention that respondent has not shown that he in fact received the $ 325 of dividend income. The burden is not on respondent to show that petitioner received the $ 325 in dividend income but is on petitioner to show error in respondent's determination. Rule 142(a) of the Tax Court Rules of Practice and Procedure. However, in this case respondent did introduce evidence at the trial which clearly shows that petitioner did receive the $ 325 of dividend income which respondent determined was properly includable in his taxable income. [2]
*597 Petitioner's primary argument is that he made a proper request to be informed according to the provisions of the Privacy Act of 1974 with respect to a number of items, that respondent failed to provide the information which he was required to provide by the Privacy act and therefore, even if the Court concludes that petitioner did receive the $ 325 of taxable income, respondent's notice of deficiency should be held unlawful and set aside because of respondent's improper action. Initially we pointed out that this record is totally inadequate to show that respondent has violated the provisions of the Privacy Act of 1974. Petitioner placed in evidence a copy of the notice with respect to the Privacy Act which he received with his 1975 Federal income tax return form, and certain correspondence between him and the Internal Revenue Service. However, he did not place in evidence the letter of July 7, 1978, to him from the Disclosure Officer at Chamblee, Georgia to which he referred in his letter dated September 5, 1978. Insofar as this record shows, this letter of July 7, 1978, from the Disclosure Officer may have contained all the information to which petitioner might be entitled *598 under the Privacy Act of 1974. More important, however, is the fact that the deficiency notice issued by respondent is not invalid, regardless of what rights petitioner might have to receive further information from respondent under the provisions of the Privacy Act of 1974. As we pointed out in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327-328 (1974)-- As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations. Human Engineering Institute, 61 T.C. 61, 66 (1973), on appeal (C.A. 6, Jan. 2, 1974); Efrain T. Suarez, 58 T.C. 792, 813 (1972). Thus, we will not look into respondent's alleged failure to issue a 30-day letter to the petitioners or to afford them a conference before the Appellate Division. Cleveland Trust Co. v. United States, 421 F.2d 475, 480-482 (C.A. 6, 1970); Luhring v. Glotzbach, 304 F.2d 560 (C.A. 4, 1962); Crowther v. Commissioner, 269 F.2d 292, 293 (C.A. 9, 1959), affirming 28 T.C. 1293 (1957). *599 The underlying rationale for the foregoing is the fact that a trial before the Tax Court is a proceeding de novo; our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level. William O'Dwyer, supra. Similarly in the instant case, even if petitioner had established that respondent had not properly complied with the requiements of the Privacy Act of 1974, this fact would not render respondent's deficiency notice invalid or arbitrary. Decision will be entered for the respondent. Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. In effect this fact had been admitted by petitioner. Respondent served petitioner with a request for admissions in which he requested that petitioner admit or deny that "Petitioner George A. Hellwarth had an account number 4694 073 045, with Loeb, Rhoades, Hornblower and Company at some time during 1975" and that "Petitioner George A. Hellwarth received $ 325.00 from Loeb, Rhoades, Hornblower and Company in 1975." In reply petitioner filed a lengthy document primarily asserting that to require him to admit or deny the requests would in effect be requiring him to be a witness against himself in a case with criminal potential in violation of his Fifth Amendment↩ rights. Respondent filed with the Court a motion requesting the Court to review the response of petitioner to his request for admissions and require petitioner to sufficiently answer his requests. The Court on November 19, 1980, entered an order directing petitioner on or before November 30, 1980, to either admit or deny respondent's two requests for admissions served on January 22, 1980, and if petitioner failed to comply, the two statements would be deemed admitted. The Court has been furnished with no reply by petitioner to respondent's request for admissions.