WILLIAM LEE TRACY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89304. Promulgated March 10, 1939.

*F. A. Pike, C. P. A.,* for the petitioner.
*E. A. Tonjes, Esq.,* and *R. T. Miller, Esq.,* for the respondent.

580

OPINION.

Arnold: The deductions claimed by the petitioner are allowable, if at all, under section 23 (a) of the Revenue Act of 1934, the pertinent portions of which are set forth in the margin.[1]

It is petitioner's contention that the bestowal of gratuities on the employees of different studios is an ordinary and necessary expense of a featured motion picture actor. He further contends that his ex-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *

penditures for meals and lodging while he was away from home in pursuit of his business as a professional actor are deductible as ordinary and necessary expenses of his business. There is no dispute as to the amounts involved, and petitioner is entitled to deduct the entire amount claimed in each instance if he is entitled to any deduction whatsoever.

We will consider first whether the so-called studio gratuities were ordinary and necessary expenses of petitioner's business. The testimony in this case shows that the distribution of gratuities among studio employees is a customary practice among leading actors and actresses, and petitioner testified that his distribution was a recognition that the studio employees had rendered additional services beyond what was required of them by the employing studio in the production of the picture.

We have considered the right to deduct "tips" in a number of cases, both where the tip formed a part of a larger deduction, and where it was a separate deduction, *Lenore Ulric*, 27 B. T. A. 666, reversed by mandate of Second Circuit, without opinion, February 14, 1935; *Blackmer* v. *Commissioner* (C. C. A., 2d Cir.), 70 Fed. (2d) 255, reversing memorandum opinion of the Board; and *Charles Hutchison*, 13 B. T. A. 1187.

In *Reginald Denny*, 33 B. T. A. 738, the amount of the gift was so large that the Board refused to consider it as either an ordinary or a necessary expense without a showing that the services were in some way commensurate with the outlay, citing *Welch* v. *Helvering*, 290 U. S. 111.

The success and earning power of motion picture actors depend upon their appeal to the public. Their salaries are based largely on their ability through public popularity to increase box office receipts. Reasonable expenditures, although in the nature of gratuities, designed to improve the quality of their work and enhance their reputation as actors, promote popularity with the public and result in better box office receipts. This in turn enhances the earning power of featured actors. Better cooperation of studio employees tends to that end. It contributes to the build-up of the actors which justifies the studio in paying for their services salaries in proportion to their drawing power. Cf. *Blackmer* v. *Commissioner*, *supra*.

The gratuities given by Tracy were not of such large amounts as to come within the doctrine of the *Denny* case, *supra*. None of the recipients of Tracy's bounty was in his employ and there was no obligation on his part to make the gifts, but they were made in accordance with a custom in the motion picture industry and for a recognized business purpose. It was his association with these studio employees in making pictures and their services for him that prompted

the making of the gifts. The gratuity to each was an acknowledgment by petitioner that the extra personal services rendered were of benefit to him in making the pictures. In our opinion there was a direct relationship between the expenditures and petitioner's business as a professional actor. For the foregoing reasons it is our opinion that the $161 should be allowed as an ordinary and necessary business expense.

The other deduction in controversy involves $2,600, representing petitioner's expenses for meals and lodging during 1934. Petitioner's entire argument with respect to this deduction is based upon his claim that Trucksville, Pennsylvania, is his home, and that while he was in California in pursuit of his business as a professional actor, he was "away from home" within the meaning of the statute. Petitioner's "home" within the meaning of the controlling statute includes his business location, post, or station, *George W. Lindsay*, 34 B. T. A. 840; *Mort L. Bixler*, 5 B. T. A. 1181; and *Charles E. Duncan*, 17 B. T. A. 1088; affirmed without opinion, 47 Fed. (2d) 1082, and clearly under the facts in this case his "home" was in California. He testified that by 1929 he had definitely determined to pursue a career as a professional actor. Necessarily such a career would have taken him away from Trucksville, as there were no opportunities there for a professional actor. His purpose in going to California was to pursue his vocation as an actor, particularly in motion pictures. He further testified that during 1933 and 1934 he spent practically his entire time in California pursuing his career. In view of these facts his expenditures for meals and lodging represent his personal living expenses, which are not deductible from gross income. Sec. 24, Revenue Act of 1934.

In his return for the taxable year the petitioner claimed an exemption of $2,500 as the head of a family. In determining the deficiency he was allowed this exemption but, by an amendment to the answer, respondent asserts that petitioner is entitled only to the exemption allowed a single man, namely, $1,000. The evidence shows that petitioner inherited the family home from his father in 1928, that it was occupied by his mother and his niece, that his mother had a small independent income, but that more than 50 percent of the funds needed to support the family was provided by petitioner. It further appears that petitioner exercised control so far as the determination of major questions relating to the family home was concerned, and that his mother operated the home and took care of his niece, who was less than 18 years of age.

Section 25 (b) (1) of the Revenue Act of 1934 provides that the personal exemption "in the case of a head of a family or a married

person living with husband or wife" is $2,500. Article 25-4 of Regulations 86 states:

A head of a family is an individual who actually supports and maintains in one household one or more individuals who are closely connected with him by blood relationship, relationship by marriage, or by adoption, and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation. In the absence of continuous actual residence together, whether or not a person with dependent relatives is a head of a family within the meaning of the Act must depend on the character of the separation. * * *

This petitioner actually supported and maintained in one household two individuals who were closely connected with him, his mother and niece, and exercised a certain amount of family control over them. He provided the home inherited from his father and approximately $2,500 for their care and maintenance during the taxable year. Petitioner was morally and legally obligated to support his widowed mother to the extent needed, and certainly there was a moral obligation to support his dependent niece. The evidence clearly discloses the character of the separation of Tracy from his family. The pursuit of his profession required his presence in California, but we do not understand the regulations or the decided cases to hold that Tracy must have resided with his mother and niece in order to be entitled to the exemption. Cf. *Olive Ross*, 37 B. T. A. 928, and cases cited. In determining the present deficiency the respondent allowed the petitioner a personal exemption as a head of a family, and in our opinion, the evidence in this case shows that such an exemption is correct.

Reviewed by the Board.

*Decision will be entered under Rule 50.*