EDWARD MATHEWS AND CLYTIE MATHEWS, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 58115, 60411.   Filed June 7, 1961.

*Morris M. Grupp, Esq.*, for the petitioners.
*Donald G. Daiker, Esq.*, for the respondent.

### OPINION.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income tax of petitioners for the years 1951 and 1953 in the amounts of $181.94 and $255.63, respectively. The sole issue presented concerns traveling expenses claimed by petitioners. All of the facts are stipulated.

The petitioners are husband and wife who during the years 1951 and 1953 resided in Mendocino, California, and filed their returns with the director of internal revenue at San Francisco, California.

Edward Mathews, hereinafter referred to as petitioner, was employed as a choker setter in the logging business. A choker setter puts a chain around the felled trees so that the logs can be pulled to the landings behind a caterpillar tractor. Petitioner was not required to carry tools into the woods; however, in the course of his employment he was required to be present at various designated landings. Landings are loading areas in the woods within a logging location where the felled timber is taken to be loaded onto trucks. Logging locations are general areas where timber is cut. One location may include a number of landings.

There were no schools, stores, or places of residence available near the jobsites and the only mode of transportation to the locations was by private automobile which necessitated the use of both public and private roads.

In 1951 petitioner worked at 10 landings within one logging location. These landings were approximately 1,000 feet apart. He traveled approximately 20 to 22 miles daily from his home in Mendocino to the various jobsites, although he could have resided in Fort Bragg, a town with a population of approximately 4,000 people which would have been 11 miles closer to the jobsites.

In 1953 he was employed at some six to eight different locations in the woods ranging up to 16 miles apart, and at each of these locations

the landing sites changed several times a month, and ranged from 1,000 feet to 1 mile apart. During 1953 Mendocino was the closer town and petitioner traveled approximately 25 to 28 miles daily from his residence to the logging locations.

The parties have stipulated that in lieu of claimed automobile depreciation of $840.15 and $925.50 for 1951 and 1953, respectively, the petitioner expended $936.15 and $935 in 1951 and 1953, respectively, traveling from his residence to his place of employment and return. It also has been agreed that the only issue here is whether petitioner may deduct the cost of traveling between his home and his place of employment in the woods.

"[T]raveling expenses * * * while away from home in the pursuit of a trade or business" are deductible under section 23(a)(1)(A), I.R.C. 1939.

Except that the petitioner in this case transported no tools, the facts here are similar to those presented in *Charles Crowther*, 28 T.C. 1293 (1957). In that case the taxpayer was employed in cutting or sawing down timber at various "layouts." He resided with his family 40 miles or more from the layouts due to the unavailability of adequate living accommodations at the jobsites. There being no public transportation into the woods, the taxpayer used his own automobiles and jeep to make daily trips from his residence to the layouts and also to transport certain tools and equipment which he used in his work. In reaching our result that a portion of the amounts expended was a nondeductible commuting expense and that the portion which was attributable to transporting the tools and equipment was deductible as an ordinary and necessary business expense, this Court said, at page 1299, that—

> It has long been established that commuting expenses, or expenses incurred in traveling from home to one's place of business or employment, are not deductible as business expenses. * * * The rule is the same regardless of the distance traveled between home and the place of business, * * * and regardless of any equitable consideration which makes the use of a particular mode of transportation necessary, * * *

The taxpayer in *Crowther* appealed and our decision was reversed by the Ninth Circuit, *Crowther* v. *Commissioner*, 269 F. 2d 292, 298 (C.A. 9, 1959). In the course of its opinion the appellate court observed:

> In this case, there was the necessity of traveling back and forth to the "layout", although the necessity was caused not by the law, as in *Emmert*, [146 F. Supp. 322] but by the lack of living accommodations at the log sites and by the necessity of carrying tools back and forth to be repaired. Here, also, the work locations were temporary, there being seven of these locations in the two-year period. Here, also, the length of time of the work at the various locations was not determined by the taxpayer, but was determined by his employer, depending upon the amount of logs to be cut.

Here, also the taxpayer did not have a choice of living at the job-site or at his regular home as the petitioner did in *Flowers, supra,* [326 U.S. 465 (1946)] and in *York, supra,* [160 F. 2d 385, (C.A.D.C. 1947)] and in *Ney, supra.* [171 F. 2d 449 (C.A. 8, 1948).]

The contention of the respondent that the tax home of the taxpayer was at the seven different layouts in the woods, does not appear realistic to us. His residence in Fort Bragg was in a central location to all of the layouts; to some he had to go north, to others he had to go east, to others he had to go south from Fort Bragg.

The necessity of daily transporting his tools from his layout in the woods, to Fort Bragg, for the purpose of repair or replacement, appears important to us. This was a business necessity, rather than a personal necessity. Of course, he could not know what part or tool would break or when it would require repair or replacement. Whenever that happened, however, he was required to transport it by jeep or car for such repairs or replacement as might be necessary. His work stopped if this was not done.

We believe that the automobile and the jeep expenses in this case came within the language of Sec. 23.

Also see *Rice* v. *Riddell,* 179 F. Supp. 576; *Carlson* v. *Wright,* 181 F. Supp. 568.

While *Crowther* was on appeal this Court decided *William L. Heuer, Jr.,* 32 T.C. 947 (1959), a case in which the taxpayer was a Mississippi River boat pilot. He received his assignments from a pilots' association and used his automobile to drive from his residence to points of assignment and return as well as between assignments. We held that to the extent the automobile expense represented amounts incurred in traveling from his residence to the points of assignment it was a nondeductible commuting expense, but that part which represented the cost of traveling between assignments was deductible. In *Heuer* we cited our holding in *Crowther* for the proposition that:

The courts have always recognized a distinction between expenses of traveling incurred in carrying on a trade or business and commuting expenses, that is, those incurred in going from one's residence to one's place of work and return. The latter have always been held to be nondeductible personal expenses, as distinguished from business expenses. * * * The rule is the same regardless of the distance traveled between the residence and the place of business, regardless of any equitable consideration which makes the use of a particular mode of transportation necessary, irrespective of whether or not public transportation is available, and irrespective of whether living accommodations are available to the taxpayer and his family at or near the place of business.

On appeal *Heuer* was affirmed by the Fifth Circuit in a per curiam decision. *Heuer* v. *Commissioner,* 283 F. 2d 865 (C.A. 5, 1960).

In this case, as in *Crowther* and *Heuer,* we are confronted with the question of whether amounts expended in traveling from the taxpayer's residence to certain designated jobsites constitute "traveling expenses" incurred "while away from home in the pursuit of a trade or business" or nondeductible commuting expenses.

The Commissioner contends that petitioner's "tax home" is the general area in the woods which is his permanent and primary place of employment and therefore he is not "away from home" within the meaning of section 23(a)(1)(A).

Conversely, petitioner argues that Mendocino was his "tax home" and that during all of 1951 and 1953 he was employed at minor and temporary sites of duty in the woods. He concludes that expenses incurred in traveling to these various temporary jobsites from his "tax home" in Mendocino represent deductible traveling expenses.

Petitioner's contention in the case before us conforms with the view of the Court of Appeals in *Crowther*, that "the work locations were temporary, there being seven of these locations in the two-year period." With all due respect to the Ninth Circuit we cannot accede to the view that such work locations constitute severable jobs of a temporary character. As we see it, petitioner was permanently employed in a generally defined area. Although petitioner's jobsites were relocated periodically by his employer, we think that to treat each new location as a "temporary" job ignores the nature of petitioner's work and fragmentizes without justification what we believe to be a continuous employment extending over an indefinite period. Similarly, in *Heuer*, this Court stated, at page 952, that:

We think the proper conclusion in the situation here presented is that the petitioner's place of employment was the area in which were located the various docks and wharves to which he was subject to being assigned and that cost of travel from his residence to any point of assignment and return constituted commuting expense. True, this was a large area and involved over 100 possible points of assignment, and the petitioner was subject to assignment at all hours; nevertheless, the petitioner's costs of travel from his residence to any point of assignment and return cannot, in our opinion, properly be considered as expenses paid or incurred in the carrying on of his trade or business. Rather, they were personal expenses incurred in traveling to and from the site of his work. We cannot agree with the petitioner that his residence is in essence his business headquarters, trips from and to which constituted business trips. * * *

In *Floyd Garlock*, 34 T.C. 611, 615 (1960), the taxpayer worked at four different construction sites; however, this Court said that:

We view petitioner's employment during the taxable years in issue as constituting one single job rather than several distinct and separate jobs. It is true that during the 2 years in issue petitioner worked at four different construction sites. However, a mere geographical relocation from one construction site to another does not of itself automatically give rise to a new, separate and distinct job. Here all of the construction sites were, with one exception, within a 15-mile radius of Passaic, New Jersey. At each of them petitioner worked for the same employer and although petitioner's relocations may have been sudden and without advance notice, they were presumably at the direction of and for the benefit of his employer.

The Court of Appeals in *Crowther* also asserted that to view "the tax home of the taxpayer [as being] at the seven different layouts in woods, does not appear realistic to us." Although no cases were cited in respect to the foregoing statement such a position seems to find its basis in the dissenting opinion in *Peurifoy* v. *Commissioner*, 358 U.S. 59 (1958). *Peurifoy* involved a procedural problem and the Supreme Court in a per curiam decision affirmed the Court of Appeals for the Fourth Circuit's finding that the taxpayer's employment was indefinite rather than temporary. However, the dissenters from the majority opinion stated:

> The meaning of "home" was expressly left undecided in *Flowers* but is squarely presented in the instant case. I disagree with the Commissioner's contention that "home" is synonymous with the situs of the employer's business. Such a construction means that the taxpayer who is forced to travel from place to place to pursue his trade must carry his home on his back regardless of the fact that he maintains his family at an abode which meets all accepted definitions of "home". I do not believe that Congress intended such a harsh result when it provided a deduction for traveling expenses. These construction workers do not have a permanent locus of employment as does the merchant or factory worker. They are required to travel from job to job in order to practice their trade. It would be an intolerable burden for them to uproot their families whenever they change jobs, if those jobs happen to take them to a different locality. When they do not undertake this burden they are living "away from home" for the duration of the term of the jobs.

See also *Commissioner* v. *Flowers*, 326 U.S. 465. This dissent coincides with the prior opinion of the Ninth Circuit in *Wallace* v. *Commissioner*, 144 F. 2d 407 (C.A. 9, 1944), that "home" should be interpreted for statutory purposes as the residence of the taxpayer as opposed to his place of employment. In that case the court said, at page 410:

> We have found nothing in section 23(a)(1) of the Internal Revenue Code, 26 U.S.C.A. Int. Rev. Code § 23(a)(1) or in the earlier legislation from which this code provision is derived which denotes any intent by Congress to attribute to the word "home" as therein used any unusual or novel meaning.

See *Coburn* v. *Commissioner*, 138 F. 2d 763 (C.A. 2, 1943). However, in contrast to its former position on this point, the Ninth Circuit in the recent case of *Harvey* v. *Commissioner*, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959), commented "that one's tax home is not his place of abode, but is his 'home post', his principal place of employment." This is in accord with our view that "For the purposes of the statute, a taxpayer's home means his place of business, employment, or post or station at which he is employed," *Raymond E. Kershner*, 14 T.C. 168, 174 (1950); *Barnhill* v. *Commissioner*, 148 F. 2d 913 (C.A. 4, 1945), affirming a Memorandum Opinion of this Court; *James R. Whitaker*, 24 T.C. 750 (1955); *S. M. R. O'Hara*, 6 T.C. 841 (1946); *Walter M. Priddy*, 43 B.T.A. 18 (1940); *William*

*Lee Tracy*, 39 B.T.A. 578 (1939) ; *George W. Lindsay*, 34 B.T.A. 840 (1936) ; *Mort L. Bixler*, 5 B.T.A. 1181 (1927).

On the facts of this case we think that petitioner's "tax home" was the entire area within a reasonable radius of his place of work where he might normally expect to find living quarters from which he could commute to work. All of the travel for which petitioner claims deductible expenses took place within this area and consisted entirely in daily driving between his residence and his place of work. The situation is similar to that of a person employed in the downtown financial district of New York City, where there are obviously insufficient living quarters within ordinary walking distance for all persons employed in that area, and, of necessity, many, if not most of them, live where they must use some form of transportation to get to work. Surely, such persons have a tax home in New York City and its environs from which it would be reasonable to expect them to commute to work. Petitioner's tax home likewise embraces the entire area surrounding his place of work where he might ordinarily be expected to maintain a residence within reasonable commuting distance from his place of work, and such commuting expenses do not qualify for deduction.

Furthermore, we do not think that the absence of public transportation to the jobsite or the fact that suitable living accommodations were not available at the jobsite are sufficient grounds to afford petitioner preferential treatment in respect to expenses that would otherwise be classified as personal commuting expenses. Cf. *Harry F. Schurer*, 3 T.C. 544 (1944), where we said that the taxpayer was "away from home * * * in pursuit of his trade"; our holding in *E. G. Leach*, 12 T.C. 20 (1949), that the taxpayer "had no regular post of duty or place of regular employment * * * which could be called his 'home' "; and the conclusion in *Emmert* v. *Commissioner*, 146 F. Supp. 322, 328, that the taxpayer was not a commuter because—

In order to produce and collect his salary, a judge of the Supreme Court of Indiana must continue to reside in the judicial district from which he is elected [even though] the major functions of his office [are performed] in the Capitol Building at the seat of government.

We conclude that the expenses were incurred by petitioner in traveling from his residence to the general area where he was permanently employed and are nondeductible commuting expenses. *William L. Heuer, Jr., supra; Mort L. Bixler, supra; Frank H. Sullivan*, 1 B.T.A. 93 (1924); *Williard I. Thompson*, 15 T.C. 609 (1950) ; and *Lenke Marot*, 36 T.C. 238 (1961).

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

Drennen, J., concurring: I disagree with Judge Pierce that *Crowther* v. *Commissioner*, 269 F. 2d 292 (C.A. 9, 1959), reversing a decision of this Court reported at 28 T.C. 1293 (1957), is necessarily controlling here.

In this case by agreement the issue is limited to whether petitioner may deduct the cost of traveling between his home and his place of employment in the woods. Petitioner was not required to carry tools or equipment to and from his home to the worksite, and there is no issue with respect to the cost of his transportation from one location to another after he arrived at a worksite. The basic premise upon which this case is decided, or at least in my opinion should be decided, is that petitioner's tax home was the entire area within a reasonable radius of his place of work where he might normally expect to find living quarters from which he could commute to work, and that the expenditures here involved were purely and simply commuting expenses, which all agree are nondeductible.

On this approach to the question we need not be concerned with whether each location was a separate job or whether the jobs were temporary or indefinite. Those questions arise only when the expenses are incurred while away from home—and, in my opinion, the expenses here involved were not incurred away from home. And here there was no business necessity of daily transporting his tools from his layout in the woods for the purpose of repair or replacement, to paraphrase the language used by the Court of Appeals in its *Crowther* opinion.

It does not appear from its opinion that the Court of Appeals considered this approach to the problem in the *Crowther* case. Nor can we predetermine how much weight the Court of Appeals for the Ninth Circuit would give to the absence of the necessity of carrying tools or use of the car for any purpose other than going to and from home, two factors which are not involved in this case but were considered in the *Crowther* case. The Court of Appeals in the *Crowther* opinion specifically stated that the business necessity of transporting tools daily appeared important to them. Consequently, while admittedly the facts in the two cases are rather similar, I do not consider the decision of the Court of Appeals for the Ninth Circuit controlling here.

Raum, Bruce, and Mulroney, JJ., agree with this concurring opinion.

———

Pierce, J., dissenting: This case again raises the question: Whether, under the system for Courts of Appeals review and venue which Congress has provided in respect of decisions of this Court, and also under judicial tradition, this Court should, in deciding the

second of two successive parallel cases that have originated within the jurisdictional area of the same circuit of the Courts of Appeals, follow such controlling circuit's decision in the first of these parallel cases, wherein the decision of this Court was reversed. I think this question should be answered in the affirmative; and accordingly, that the instant case should have been decided by this Court in conformity with the decision of the Ninth Circuit in *Crowther* v. *Commissioner*, 269 F. 2d 292 (1959), reversing the decision of this Court therein, which is reported in 28 T.C. 1293.

The *Crowther* case and the instant case are, in my view, substantially identical, as regards their facts, the issue presented, and the taxable years and statutory provisions involved; and indeed this Court, in discussing the *Crowther* case in its opinion herein, did not attempt to distinguish the two cases. In both cases, the taxpayer resided in Mendocino County, California—one lived in the town of Fort Bragg, and the other in the town of Mendocino which was about 11 miles distant. Both taxpayers were employed in logging operations (one as a "faller" and "bucker," and the other as a "choker setter"). And each traveled long distances each day by automobile or jeep, to various shifting jobsites in the woods where trees were being felled and the logs were being loaded onto trucks. In both cases, it was necessary for the taxpayer to travel by private conveyance, for there was no available public transportation; and in neither case was the taxpayer reimbursed for his traveling expenses. In the *Crowther* case the taxpayer carried some tools with him, while in the instant case no tools were carried; but the Court of Appeals did not base its decision on such distinction. In both cases, no living accommodations were available at the jobsite for either the taxpayer or his family,

The issue presented for decision in each of the two cases was the same, i.e.: Whether the taxpayer's unreimbursed expenses of traveling between his residence and the various jobsites in the woods, were deductible as "traveling expenses * * *while away from home in pursuit of a trade or business," within the meaning of section 23(a)(1)(A) of the 1939 Code, and the corresponding provisions of the 1954 Code, which the Court of Appeals found to have been carried over to this latter Code without substantive change. In the *Crowther* case the taxable years involved were 1951 and 1954; while in the instant case, the years involved were 1951 and 1953.

In the *Crowther* case, the Ninth Circuit, after setting forth an extensive review of the statutes, the pertinent judicial authorities, and a published ruling of the Treasury Department, reversed the decision of this Court and held that the disputed traveling expenses *were* deductible. In the instant case however, this Court has expressed dis-

agreement with certain of the Ninth Circuit's views; and, notwithstanding the reversal of its decision in the *Crowther* case, it has held that the disputed traveling expenses *are not* deductible. The result is, that the two taxpayers have been accorded unequal tax treatment; and that the taxpayer in the instant case must now, if he is to attain equal tax treatment, bear the burden and expense of carrying a new appeal to the same controlling Circuit. This result, it seems to me, is not warranted under our judicial tradition.

Two Courts of Appeals have heretofore admonished this Court, in no uncertain terms, that it is the duty of this Court to follow the settled law of the controlling circuit. *Stacey Mfg. Co.* v. *Commissioner*, 237 F. 2d 605 (C.A. 6, 1956); and *Sullivan* v. *Commissioner*, 241 F. 2d 46 (C.A. 7, 1957), affirmed without discussion of this point in 356 U.S. 27 (1958). In the *Stacey* case, the Sixth Circuit said, in part:

the Tax Court of the United States is not lawfully privileged to disregard and refuse to follow, as the settled law of the circuit, an opinion of the court of appeals for that circuit. * * *

The desire of the tax court to establish by its decisions a uniform rule does not empower it to disregard the decisions of its several reviewing courts of appeals. It is for the Supreme Court of the United States—and for that tribunal alone—to review and reverse decisions of the courts of appeals of the United States in their respective jurisdictions. Until the Supreme Court reverses a rule by a court of appeals for its circuit, that rule must be followed by the tax court.

The Seventh Circuit in its opinion in the *Sullivan* case, made a similar statement. No contrary statement of any appellate court has been found.

I believe that, in the circumstances here present, this Court should have regarded the Ninth Circuit's decision in the *Crowther* case to be here controlling; and that it should have decided the present case in favor of the petitioners.