William W. Steinhort and Mildred Steinhort v. Commissioner. J. E. McNary and Wilma Jewel McNary v. Commissioner.
Steinhort v. Commissioner
Docket Nos. 90154, 90495.
United States Tax Court
T.C. Memo 1962-233; 1962 Tax Ct. Memo LEXIS 76; 21 T.C.M. (CCH) 1255; T.C.M. (RIA) 62233; October 2, 1962
Douglas W. McGregor, Esq., 2331 Gulf Bldg., Houston, Tex., for the petitioners. Robert L. Liken, Esq., for *77 the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years and the amounts as follows: Dkt. No.
Year
Deficiency
William W. Steinhort
and Mildred Stein-
hort
90154
1957
$687.74
1958
687.17
J. E. McNary and
Wilma Jewel Mc-
Nary
90495
1956
326.53
1957
536.49
1958
550.27
The sole issue is whether petitioners, who are Houston Ship Channel pilots, are entitled to deduct the cost of maintaining and operating their automobiles, as well as depreciation thereof, in traveling from their residences to points of assignment and return. Findings of Fact Some of the facts have been stipulated and are hereby found as stipulated. William W. Steinhort (hereinafter sometimes referred to as Steinhort) and Mildred Steinhort are husband and wife and reside in Houston, Texas. Federal income tax returns for the taxable years 1957 and 1958 were filed with the district director of internal revenue, Austin, Texas. J. E. McNary (hereinafter sometimes referred to as McNary) and Wilma Jewel McNary are husband and wife and reside in *78 Houston, Texas. Federal income tax returns for the taxable years 1956, 1957 and 1958 were filed with the district director of internal revenue, Austin, Texas. Since Mildred Steinhort and Wilma Jewel McNary are parties only because they signed joint returns, Steinhort and McNary will be referred to as the petitioners. Petitioners, during the taxable years, were commissioned by the State of Texas as branch pilots, Galveston Bar and Houston Ship Channel. Petitioners were engaged in piloting ships in the Houston Ship Channel which extended from the Turning Basin in Houston, Texas, (which is where the deep water ended in the channel) to a sea buoy in the Gulf of Mexico. The distance from the Turning Basin to the sea buoy was approximately 56 miles. On occasion, petitioners were also required to move ships from berth to berth within the Turning Basin in what is known as a shifting operation. From time to time, petitioners were required to move vessels from one dock to another in the ship channel. The docking area covers a distance of approximately 15 miles. When a ship is piloted from the Turning Basin to open sea, a distance of approximately 56 miles, the pilot leaves the vessel *79 at the bar in the Gulf of Mexico and then boards a small craft, maintained by the pilots' association, which returns him to Galveston from whence he returns to Houston at his own expense. If there is an incoming vessel that needs a pilot, the pilot may elect to board that vessel and pilot it to the Turning Basin in Houston. On occasion, ships move from the bar at sea in the Gulf of Mexico and stop in what is known as Bolivar Roads for anchorage. When this occurs, the pilot leaves the vessel and returns to Galveston or to his home. He may be called again to move the same vessel or another one in a similar situation from Bolivar Roads to Houston or an intermediate point. At times, a pilot is required to stop a vessel at Bolivar Roads on an outbound voyage. The pilot may have to leave the vessel and go to Galveston or back to his home until the vessel elects to proceed to sea. Petitioners were members of the Houston Pilots Association. The association consisted of 41 branch pilots who were individually commissioned by the State of Texas to move ships up and down the Houston Ship Channel. The association acted as an agent for the pilots and maintained a dispatcher's office in Houston *80 to receive calls for them. The pilots were divided into three groups. Two groups were on duty at all times; that is, subject to being called to move a ship while the third group was off. Within the groups that were on duty, the pilots worked on a rotation system. When a pilot was on duty, he was subject to call at any time. Whether a ship was approaching from the Gulf of Mexico, or was being moved from Galveston to Houston, or was being shifted within the Port of Houston, the dispatcher's office was notified that a pilot was needed. The dispatcher then notified the individual pilot by telephone of the time and place he was to report for duty. When Steinhort received a call from the dispatcher to report for work, his wife usually drove him to the point where he was to board the ship. McNary usually had some member of his family go to the dock with him and return his car to his residence. The association owned three small boats. When a pilot arrived at the point to which he was directed, he was transported to the ship, which he was to move, by one of the smaller craft. There were approximately 63 different locations to which a pilot might report for duty to move a ship. Some *81 of these points were within the Port of Houston area, but some were as far away as Galveston. During the taxable years, petitioners deducted automobile expenses, including depreciation, of getting to the ship which they were to pilot. A portion of these expenses were disallowed. In the Steinhort notice of deficiency respondent determined that: (a) and (b) - The deductions claimed on your Federal income tax returns for the taxable years ended December 31, 1957, and December 31, 1958 for automobile expenses and depreciation have been disallowed to the extent set forth below, since such amounts to the extent disallowed represent personal expenses under section 262 of the Internal Revenue Code of 1954, being the costs of going to and from work, and do not constitute ordinary and necessary expenses of carrying on a trade or business and allowable depreciation within the purview of sections 162(a) and 167(a) of the Internal Revenue Code of 1954: Claimed
1957
Per Return
Allowable
Disallowed
Automobile Expenses (Exclusive of License)
$1,016.02
$ 406.41
$ 609.61
Automobile Depreciation
1,933.00
699.07
1,233.93
Totals
$2,949.02
$1,105.48
$1,843.54
1958
Automobile Expenses (Exclusive of License)
$ 919.19
$ 367.68
$ 551.51
Automobile Depreciation
1,993.00
699.07
1,293.93
Totals
$2,912.19
$1,066.75
$1,845.44
*82 In the McNary notice of deficiency, respondent made the following determination: (a) It is determined that $960.40, $1,511.53 and $1,487.72, respectively, of the deductions claimed for business expenses on your income tax returns for the years 1956, 1957 and 1958 are not allowable as ordinary and necessary expenses of a trade or business or as traveling expenses under the provisions of section 162 of the Internal Revenue Code of 1954, but represent and commuting expenses which are not allowable as deductions. Your income has been adjusted accordingly. The adjustments are composed of the following items: 1956
1957
1958
Transportation ex-
penses
$913.23
Taxicab and bus
fares
$ 643.20
$ 609.51
Automobile depre-
ciation
610.00
610.00
Other automobile
expense
223.37
228.31
Meals and tips
47.17
34.96
39.90
Totals
$960.40
$1,511.53
$1,487.72
Opinion There is no dispute as to the fact that the petitioners expended the amounts claimed as car expenses and sustained the amount of depreciation on their cars as claimed. Respondent admits that petitioners can deduct the cost of going from one assignment to another *83 and travel outside the Port of Houston area. The issue involved is whether petitioners can deduct the cost of travel, including depreciation on their automobiles, to their assignments and return when within the Port of Houston area. Petitioners contend that the entire amount of their claimed expenses should be allowed. Section 162(a)[1] and section 167(a), [2]1954 Code. Petitioners, relying on Commissioner v. Flowers, 326 U.S. 465 (1943), [3] contend that the ownership and use of an automobile is required by the exigencies of their business rather than their personal convenience and necessity. Petitioners contend that there were many boarding points along the Houston Ship Channel to which they must go. Petitioners also contend that many points can only be reached by privately maintained roads on which they must travel at their own risk. Petitioners further contend that there is no private transportation available to many areas. *84 Respondent contends that the portion of the expenses that were disallowed were nondeductible commuting expenses. We agree with the respondent. We find the case of William L. Heuer, Jr., 32 T.C. 947 (1959), affd. per curiam 283 F. 2d 865 (C.A. 5, 1960), to be factually indistinguishable from the case before us. The taxpayer in Heuer was a Mississippi River boat pilot who used his car in driving from his residence to points of assignment and return. In holding that the portion of the car expense and depreciation attributable to travel from his residence to points of assignment and return were nondeductible commuting expenses, we stated that: The courts have always recognized a distinction between expenses of traveling incurred in carrying on a trade or business and commuting expenses, that is, those incurred in going from one's residence to one's place of work and return. The latter have always been held to be nondeductible personal expenses, as distinguished from business expenses. Frank H. Sullivan, 1 B.T.A. 93; Mort L. Bixler, 5 B.T.A. 1181; Charles H. Sachs, 6 B.T.A. 68; Abraham W. Ast, 9 B.T.A. 694; *85 and Charles Crowther, 28 T.C. 1293, on appeal (C.A. 9). See also sec. 39.23(a)-2 of Regs. 118. The rule is the same regardless of the distance traveled between the residence and the place of business, regardless of any equitable consideration which makes the use of a particular mode of transportation necessary, irrespective of whether or not public transportation is available, and irrespective of whether living accommodations are available to the taxpayer and his family at or near the place of business. Charles Crowther, supra.
* * * We think the proper conclusion in the situation here presented is that the petitioner's place of employment was the area in which were located the various docks and wharves to which he was subject to being assigned and that cost of travel from his residence to any point of assignment and return constituted commuting expense. True, this was a large area and involved over 100 possible points of assignment, and the petitioner was subject to assignment at all hours; nevertheless, the petitioner's costs of travel from his residence to any point of assignment and return cannot, in our opinion, properly be considered as expenses *86 paid or incurred in the carrying on of his trade or business. Rather, they were personal expenses incurred in traveling to and from the site of his work. * * * See also Williard I. Thompson, 15 T.C. 609 (1950), reversed on another issue 193 F. 2d 586 (C.A. 10, 1951); Lenke Marot, 36 T.C. 238 (1961); Edward Mathews, 36 T.C. 483 (1961); Clarence J. Sapp, 36 T.C. 852 (1961); Chester C. Hand, Sr., 16 T.C. 1410 (1951). Petitioners' contention that the ownership and use of their cars was required by the exigencies of their business is without merit. Petitioners used their cars to provide a means of transportation from their homes in Houston to the points of assignment, petitioners' place of employment. Petitioners' duty to their employer was to pilot ships and, while it is true they had first to get to the points of assignment in order to perform that duty, getting there is not the connection with one's employment to which the statute is directed. While the necessity for a car may be more pressing in petitioners' case, the use of their cars is essentially a commuting use and, as such, it is an expense personal *87 in nature and not deductible from gross income. Although some of the points to which petitioner traveled were outside the Port of Houston area, petitioners have not produced any evidence that would entitle them to a greater deduction than that allowed by respondent. Decisions will be entered for the respondent. Footnotes
1. Section 162(a), 1954↩ Code, provides for the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. 2. Section 167(a), 1954↩ Code, provides for the deduction of a reasonable allowance for the exhaustion, wear, and tear of property used in the trade or business. 3. Travel expenses in pursuit of business within the meaning of § 23(a)(1)(A) could arise only when the railroad's business forced the taxpayer to travel and to live temporarily at some place other than Mobile, thereby advancing the interest of the railroad. Business trips are to be identified in relation to business demands and the traveler's business headquarters. The exigencies of business rather than the personal conveniences and necessities of the traveler must be the motivating factors. * * *↩