ARTHUR SANSONE AND RAYDA JO SANSONE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 95301. Filed November 25, 1963.

Arthur Sansone, pro se.
*Frank E. Phillips*, for the respondent.

OPINION

The issue is whether petitioner's expense of driving daily to work from his residence and return is ordinary and necessary business expense within section 162(a),[1] or nondeductible personal expense under section 262. Respondent disallowed a deduction of $1,260. Petitioner had the burden of proving that the expense is deductible.

Petitioner in effect essentially relies on *Harry F. Schurer*, 3 T.C. 544, and part of Rev. Rul. 54–497, 1954–2 C.B. 75, 81. In this ruling, dealing with railroad employees, there are discussed at length the meanings of expenses paid and incurred while in travel status "away from home," "principal or regular post of duty," "temporary or minor post of duty" away from the principal post of duty, "strictly temporary," and related matters, and at page 81 the following statement is made:

> An employee's expenses for transportation within the vicinity of the city or other comparable area which constitutes his minor or temporary post of duty, such as for "commuting" between his minor or temporary terminal and the place or places where he obtains his meals and lodging in that area, are held to be nondeductible personal expenses. *However, when an employee's minor or temporary terminal is located in a remote area and he must travel 10 or 15 miles, for example, to the nearest town or other location where he can obtain necessary living accommodations, his transportation expenses so incurred are not regarded as being in the nature of commuting expenses, but may be deducted in computing adjusted gross income.* [Emphasis added.]

Petitioner relies also on examples 9, 10, and 11 in Treasury Department Publication 300 (1956) dealing with explanations of the circumstances under which travel and transportation expenses either are or are not

---

[1] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \* \*

(2) Traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business;

deductible. This publication is reprinted in 56–4 P.-H. Fed. Taxes par. 76,425, and 63–2 C.C.H. Fed. Tax Rep. par. 1350.1433.

The contentions of petitioner, evidently based on his understanding of the above (with respect to the meaning of which for tax purposes he has not had the aid of counsel), are as follows: In 1959, Sycamore was a minor or temporary location of his job, and Sycamore was located in a "remote area"; therefore, he claims that his expenses of driving daily to Sycamore from his residence, and back, are deductible under section 162(a) as expenses incurred while "away from home."

The only case cited by petitioner is *Crowther* v. *Commissioner*, 269 F. 2d 292, reversing 28 T.C. 1293, although because of his reliance on certain tax service statements he relies in effect on the *Schurer* case.

The question presented is whether in the taxable year, petitioner's employment at Sycamore was "temporary," so as to bring the disputed expenses within the exception to the general rule stated in *Commissioner* v. *Flowers*, 326 U.S. 465, and so as to bring the expenses within the rule of *Schurer*.

At the outset, it must be emphasized that except for the use of the adjective "remote" in the example given in Rev. Rul. 54–497, *supra*, "remoteness" of the location of a taxpayer's job ordinarily is not a test of whether transportation or travel expense incurred in going to and from a work site comes within the statutory category of traveling expenses "while away from home." In *Wright* v. *Hartsell*, 305 F. 2d 221, affirming 182 F. Supp. 725 (not cited by petitioner), the court gave consideration to a situation similar to the example given in Rev. Rul. 54–497, quoted above. *Hartsell*, which is distinguishable, is considered hereinafter.

Upon consideration of the entire record and all of petitioner's argument, it is found and concluded that in 1959 petitioner's assignment to Sycamore was not temporary; the *Schurer* case and the part of Rev. Rul. 54–497 quoted above, the ruling relied upon, do not apply here; the expenses in dispute were in the nature of the expense of commuting to work; the general rule applies; the expenses do not come within any exception to the general rule, discussed hereinafter; the expenses are not deductible. Respondent's determination is sustained. The question is controlled by *Leo M. Verner*, 39 T.C. 749, 756.

Consideration first is given to petitioner's contention that his assignment to Sycamore was temporary, that it was a temporary or minor place of employment. The concept of being temporarily employed at a place embraces the correlative situation of having another place where the taxpayer is regularly or customarily employed, which continues to be the taxpayer's place of regular employment during the

period in which he is temporarily employed at the second place; i.e., the taxpayer is away from the place or area or town of his regular employment while he is temporarily employed at some other town or place. See *Coburn* v. *Commissioner*, 138 F. 2d 763; Rev. Rul. 60–189, 1960–1 C.B. 60, 62. Thus, in *Harry F. Schurer, supra*, the taxpayer, a journeyman plumber, had always carried on his trade as a plumber in Pittsburgh and was a member of a local union in that city, and he had his residence there. Due to the heavy demand for plumbers to assist in war construction, he was requested in 1941 by his union to go to work for short periods at construction projects in three different towns. He worked at Indiantown Gap, Pa., for 4 weeks; at Aberdeen, Md., for 9 weeks; and at Morgantown, W. Va., for 33 weeks; all in 1941. After each job was completed, he returned to Pittsburgh. This Court found that Schurer's employment at each of the three towns during 1941 was temporary employment "away from home" in pursuit of his trade, and relying upon *Coburn* v. *Commissioner*, *supra*, concluded that Schurer's expenses for meals and lodging while at each town and his transportation expenses from Pittsburgh to each town, and return, were deductible as traveling expenses "while away from home in the pursuit of a trade." Sec. 23(a)(1), I.R.C. 1939.

Petitioner has not established that he had a principal and regular place of employment other than at Sycamore during the period October 29, 1956, to August 28, 1961. From August 16 to October 29, 1956, petitioner was assigned from the Convair plant in San Diego City to Sycamore on a 90-day loan. Before expiration of the 90-day period, he was regularly transferred to department 573 at Sycamore and advised that he was to work there until further notice. He understood at that time, on October 29, 1956, that he would be expected to work at Sycamore for longer than a short time the end of which was then reasonably foreseeable, and in this case he testified that he understood he would be expected to work there for a substantially long period. Convair merged with General Dynamics in about September 1956 (according to the record in this case) and thereafter the work at the Convair plant was exclusively the construction of airplanes. There is nothing in the record to show that as of October 29, 1956, or any subsequent time, petitioner expected to or could have returned to the Convair plant, and he never again worked there. The only other main plant which he could claim as a place of regular employment was the new General Dynamics plant in the Kearney Mesa area of San Diego City, but he never was assigned to any work there until after August 28, 1961. In fact, his first new assignment was in Omaha, Nebr., an offsite location, to which he apparently went on August 29, 1961. He went to Omaha directly from Syca-

more, not from the Kearney Mesa plant. He admits that he was not assigned to any regular work at the Kearney Mesa plant of General Dynamics until February 1963, where he now works. (Incidentally, he still lives outside the town of Escondido in a different house than he occupied in 1959 and goes to work at the Kearney Mesa plant from there, a distance of 30 miles, or more.)

It must be concluded that in the taxable year 1959 petitioner did not have any principal place of employment other than Sycamore with respect to which Sycamore could or might be a secondary or minor place of employment.

In 1959, Sycamore was not a place of temporary employment of petitioner, and, also, it was not a temporary "plant" or division of General Dynamics, contrary to petitioner's argument, for the following reasons. The Sycamore facility was planned as one which would be operated in connection with the Atlas ICBM program for a substantial length of time. Construction of the facilities consumed about 1 year and they are in themselves substantial. Static testing of Atlas missiles of several series began in 1956 and continued into 1963, at least. The record indicates that Sycamore is not a temporary facility and petitioner has not established the contrary. Petitioner was assigned at Sycamore to do supervisory work in preparing Atlas missiles for testing. When he went to Sycamore in August 1956, the assignment was for a 90-day loan period and, therefore, it was at first temporary. But on October 29, 1956, he was notified that he was being transferred from department 756 at the Convair plant to department 573 at Sycamore and that he was to work there until further notice, no date being indicated as a termination of the assignment. In 1957, his job classification was advanced to assistant foreman in supervisory work. By the end of 1958, he had worked at Sycamore for over 2 years. There is no evidence that by the end of 1958, petitioner had any understanding that his work there would be terminated in the near future. In fact, he worked at Sycamore for 5 years and when he left in August 1961, it was not because his assignment to Sycamore had been terminated by his employer. Rather, it was because he volunteered to take his first assignment to an offsite location where General Dynamics was conducting a program or project. By 1959, petitioner's employment at Sycamore had become "indefinite," one which was not temporary, and it had become evident to him that it was very likely and probable that his employment there would not be relatively short but would be for a substantially long period. In *Harvey* v. *Commissioner*, 283 F. 2d 491, reversing 32 T.C. 1368 on other grounds, a test suggested is whether there was a reasonable probability known to an employee ("known to him") at the time he was transferred to

a new post of duty that he would be employed there for a long period of time. In this case, upon the entire record, under the above test, we think that the only conclusion which properly can be made is that as of October 29, 1956, there was a reasonable probability known to petitioner that he would be employed at Sycamore for a long period of time. That was certainly the situation by the end of 1958. In *Wright* v. *Hartsell, supra,* the Court of Appeals for the Ninth Circuit stated that a proper test is that "if the prospects are that his work will continue for an 'indefinite' or 'indeterminate' or 'substantially long' period, then the deduction [for travel expenses] is disallowed." See also *Claunch* v. *Commissioner,* 264 F. 2d 309, affirming 29 T.C. 1047; *Cockrell* v. *Commissioner,* 321 F. 2d 504, affirming 38 T.C. 470; *Floyd Garlock,* 34 T.C. 611, 615. Moreover, "temporary" employment may ripen "into a substantial, indefinite, or indeterminate, rather than a temporary duration," *Floyd Garlock, supra* at 615; *Arnold P. Bark,* 6 T.C. 851, 855; *Leo M. Verner, supra* at 754. In *Beatrice H. Albert,* 13 T.C. 129, 131, this Court observed that employment at a place may not be "permanent" but, on the other hand, if it is of "indefinite"[2] duration rather than temporary, a deduction for commuting expenses, or expenses of going to work from one's place of abode, must be denied.

In the taxable year 1959 petitioner, at Sycamore, was not working at a place of temporary employment. His transportation expenses between his residence and Sycamore do not come within the *Schurer* rule or the exceptions to the general rule on which he relies set forth in Rev. Rul. 54–497, 1954–2 C.B. 75, 81, and Treasury Department Publication 300 (1956), and are not deductible.

Petitioner has not established that he could not have mitigated, or reduced, his going-to-work transportation expenses. He admits that many employees at Sycamore did so by participating in car pools with others. We are not satisfied that he could not have participated with others in car pools a good deal of the time during 1959. With respect to the location of his residence in 1959, 10 miles north of Escondido, that location was a matter of personal choice, and if that location made participation in car pools with others, as a means of reducing transportation expense, difficult, the difficulty resulted from petitioner's personal reasons for selecting a distantly located and somewhat inac-

---

[2] The rule of *Harry F. Schurer,* 3 T.C. 544, followed in *E. G. Leach,* 12 T.C. 20, to the effect that "temporary" employment comes within the concept of traveling "away from home" has been applied in comparatively few cases by this Court. In a substantial number of subsequent cases where the facts did not show that employment at a place was temporary, it was concluded that the employment was *not* temporary. In order to distinguish the *Schurer* case, the terms "indefinite" and "indeterminate" were used to describe the duration of the particular taxpayer's employment at a place. The origin of the expression "indefinite duration of employment" was simply one of convenience to distinguish the *Schurer* case; that expression means "not temporary." See *Peurifoy* v. *Commissioner,* 358 U.S. 59; and Rev. Rul. 60–189, 1960–1 C.B. 60, 62.

cessible location for a residence. Furthermore, it was not petitioner's job at Sycamore which determined that he should move his residence to the Escondido area. He could have continued to live in Clairemont, or another section of San Diego City, and thereby reduced his mileage in driving to Sycamore to 12, 14, or 18 miles, each way.

Upon consideration of the whole record and all of the circumstances, it is our view that there is little merit in petitioner's claim that the transportation expenses at issue are deductible. Petitioner's situation was similar to that of an employee of a corporation who is transferred from one office or plant to a branch office or subsidiary plant within the same general area. Sycamore is located in San Diego County in the same general area as the location of the main plant of General Dynamics at Kearney Mesa. When petitioner was transferred to Sycamore in 1956, the transfer did not necessitate moving his family residence from where it was in 1956. In fact, the mileage from Clairemont to Sycamore, 12 or 13 miles, was much less than the mileage from his 1959 residence near Escondido to Sycamore, 28.4 miles. "The job, not the taxpayer's pattern of living," is the crucial matter in considering whether the transportation costs of going to work are deductible as business expenses under section 162(a). *Carragan* v. *Commissioner*, 197 F. 2d 246, 249; *O'Toole* v. *Commissioner*, 243 F. 2d 302, 303; *Cockrell* v. *Commissioner*, *supra*. In the instant case, it was petitioner's pattern of living, not his job at Sycamore, which caused the amount of mileage involved in the transportation expense at issue. That expense was similar to the expense of commuting to work, which always has been treated as nondeductible personal expense. *Beatrice H. Albert*, *supra*; *Commissioner* v. *Flowers*, *supra*; *Commissioner* v. *Peurifoy*, 358 U.S. 59. The general rule that the expenses of transportation between the taxpayer's residence and place of work are personal and not deductible as a business or away-from-home traveling expense has been held to apply regardless of the distance between those two locations, the lack of public transportation, the use of the taxpayer's automobile, and in spite of equitable considerations. The cases cited in the margin [3] illustrate the variety of circumstances under which deductions for such expenses have been denied. In *United*

[3] *Barnhill* v. *Commissioner*, 148 F. 2d 913; *Carragan* v. *Commissioner*, 197 F. 2d 246, 249; *Donnelly* v. *Commissioner*, 262 F. 2d 411, affirming 28 T.C. 1278; *Green* v. *Commissioner*, 298 F. 2d 890, affirming 35 T.C. 764; *Leo M. Verner*, 39 T.C. 749, 756; *Clarence J. Sapp*, 36 T.C. 852, affirmed per curiam 309 F. 2d 143; *Lenke Marot*, 36 T.C. 238; *William L. Heuer, Jr.*, 32 T.C. 947, 951–953, affirmed per curiam 283 F. 2d 865; *Darrell Spear Courtney*, 32 T.C. 334, 344; *Chester C. Hand, Sr.*, 16 T.C. 1410; *Williard I. Thompson*, 15 T.C. 609, 612–613, reversed on another issue 193 F. 2d 586; *Beatrice H. Albert*, 13 T.C. 129; *John C. Bruton*, 9 T.C. 882; *Charles H. Sachs*, 6 B.T.A. 68; *Leo C. Cockrell*, 38 T.C. 470, affd. 321 F. 2d 504; *Kalist* v. *Commissioner*, 321 F. 2d 508, affirming a Memorandum Opinion of this Court; *Frank N. Smith*, 21 T.C. 991; *Joseph M. Winn*, 32 T.C. 220; *Benson* v. *Godwin*, 164 F. Supp. 70; *O'Toole* v. *Commissioner*, 243 F. 2d 302; *United States* v. *Woodall*, 255 F. 2d 370; *Commissioner* v. *Janss*, 260 F. 2d 99.

*States* v. *Woodall*, 255 F. 2d 370, 373, in denying such deduction the court noted that "What should be allowed as an expense deduction is a matter of policy for Congress, not the Courts."

The taxpayer who takes business trips has the burden of the double expense of maintaining his family residence or regular place of abode and of paying additional sums for living accommodations, meals, and traveling expenses at the place to which his business trip takes him. In the case of an employee, his employer's business necessitates the business trip, and ordinarily a business trip is of relatively short duration. Section 162 (a) (2) allows a "special deduction to mitigate the burden which this taxpayer carries." *Harvey* v. *Commissioner*, *supra; James* v. *United States*, 176 F. Supp. 270, 272. The petitioner during the taxable year was not under the burden of such double expenses.

In *Commissioner* v. *Flowers*, *supra*, the United States Supreme Court declared that three conditions must be satisfied before a deduction can be allowed under the applicable statute; that "Failure to satisfy any one of the three conditions destroys the travel expense deduction"; that it is a question of fact in most instances whether a particular expenditure fulfills the three conditions; and that it is the exigencies of the business involved and the interests of the employer rather than the personal conveniences and necessities of the employee which must motivate the traveling expense. Petitioner's expenses do not satisfy the second and third conditions, namely, that the expense must be incurred "while away from home," and that the expense must be directly related to and necessary to the pursuit of the employer's business.

Consideration has been given to the cases of *Crowther* v. *Commissioner*, *supra; Wright* v. *Hartsell*, *supra;* and *Mathews* v. *Commissioner*, 310 F. 2d 111, reversing per curiam 36 T.C. 483. These cases are on their facts distinguishable from the instant case.

This Court has stated the reasons making *Hartsell* distinguishable from the case of *Verner*, and since the facts here closely resemble those of *Verner*, the same distinction is made here. *Leo M. Verner*, *supra*, at 755–756. Hartsell, a construction worker, has his regular place of abode in Pocatello, Idaho (which also was the area of his general employment and location of his union), 70 miles (140 miles round trip) from the AEC site extending over 1,500 square miles in a desert in southeastern Idaho. The closest town with housing accommodations is Arco, 46 miles from that site. He drove daily between Pocatello and that site; he received for such trips allowances from his several employers. It was held that part of the expense was deductible because directly related to the exigencies of business rather than the taxpayer's personal necessity and convenience; and that

other expense incurred in the performance of a temporary job, one of several jobs held in the taxable period, was deductible. In the instant case, petitioner's job was not temporary; towns providing housing are located 12 to 18 miles from Sycamore; the respective locations of Sycamore and the AEC site in the *Hartsell* case are not comparable; Sycamore is not in a "remote" area. The distance which petitioner drove to work could have been reduced from 30 miles to 12 or 14 miles if he had wished to mitigate his transportation expense by selecting a residence in a town closer to Sycamore, which he could have done. His argument that the closest town, Poway, did not have available housing is not in point. The point which is significant is that the location of Sycamore is such that all employees working there have a choice of several towns with available housing which are less than 20 miles distant and petitioner was not obliged to live 30 miles away. We regard a 30-mile trip as commuting distance the expense of which is personal under the general rule. *Leo M. Verner, supra.*

The cases of *Crowther* and *Mathews* involved workers employed in the logging industry. The Court of Appeals for the Ninth Circuit concluded in both cases that the exception to the general rule properly should be made because each taxpayer worked at several "temporary" jobs at different log sites for different employers. Deductions were allowed for the automobile expense of driving to the various log sites, which allowances come under the rule of *Harry F. Schurer, supra.* The court concluded that the facts in *Mathews* were indistinguishable from those in *Crowther.*

In *Mathews* this Court was of the opinion that the taxpayer "was permanently employed in a generally defined area" and that to treat each new work location as a "temporary" job amounted to an unjustifiable fragmentization of what we regarded as "continuous employment extending over an indefinite period." *Edward Mathews,* 36 T.C. 483, 486. In effect, we took the same view in *Crowther.* The Court of Appeals disagreed with this view in both cases. In *Crowther, Hartsell,* and *Mathews,* the Court of Appeals took the view that the conditions and circumstances under which each taxpayer obtained particular jobs were such that each job should be considered separately, even though all of the jobs of each taxpayer were located in a particular geographical area, and that so regarded, each taxpayer worked at several "temporary" jobs during a tax period, thus, in effect, bringing the automobile expense of daily trips to a particular job site within the rule of *Harry F. Schurer, supra,* the exception to the general rule that expenses of getting to work are personal.

This case does not involve a taxpayer who worked for different employers at different work sites during the taxable period. We do

not have the problem here of determining whether a taxpayer's general employment within a defined area should or should not be fragmentized into a series of "temporary" jobs. The basic distinction here is that petitioner worked continuously before, during, and after the taxable year for one employer and he had just one job, which was not temporary. The fact that during 1959 he sometimes worked at test site 1 rather than test site 2 is not material; his work was the same at both sites; the Sycamore area is a relatively small one of 2.25 square miles; and the facts here do not justify breaking up petitioner's employment at Sycamore into fragments. Petitioner, unlike the taxpayers in the cases cited above, was not employed temporarily at various work locations by one employer or by different employers, and his employment in the taxable year was not comparable to their particular situations. The cases of *Hartsell*, *Crowther*, and *Mathews* are distinguishable and inapplicable; the rule of *Schurer* does not apply.

It is held that petitioner's automobile expenses during 1959 are not deductible under section 162(a).

*Decision will be entered for the respondent.*